## HODGKINS v. COMMISSIONER OF INTERNAL REVENUE.
### No. 4178.

Circuit Court of Appeals, Seventh Circuit.
Oct. 16, 1930.

John E. Hughes, of Chicago, Ill., for petitioner.

Frank S. Bright and Lowndes C. Connally, both of Washington, D. C., for petitioner as amici curiæ.

G. A. Youngquist, Asst. Atty. Gen., Andrew D. Sharpe, Sp. Asst. Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Prew Savoy, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before EVANS, SPARKS, and PAGE, Circuit Judges.

EVANS, Circuit Judge.

Petitioners, through this appeal, seek to review the order of the Board of Tax Appeals which included as part of the estate of Jefferson Hodgkins, for taxation purposes, nine hundred shares of the stock of the Brownell Improvement Company of the fair market value of $260 per share. Hodgkins transferred this stock in trust about fourteen months prior to his death, which was January 2, 1921.

Three questions are presented: (a) the construction of the repeal section of the Revenue Act of 1921 (Estate Tax); (b) did Hodgkins execute the trust in contemplation of death? (c) the effect of the trust agreement executed by Hodgkins.

■ (a) Contending that the 1921 Revenue Act (42 Stat. 320) repealed the Act of 1918 save as to taxes "which have accrued under the Revenue Act of 1918 at the time such parts cease to be in effect," petitioners charge that no estate tax had accrued on November 23, 1921, the date when the 1918 Act was repealed. In short, petitioners assert that no estate tax accrued under the 1918 Act (40 Stat. 1096) until one year after decedent's death. Inasmuch as the 1918 Act was repealed within one year from the date of Hodgkins' death, no tax had accrued, and therefore the saving clause of the 1921 Act does not apply. Wilmington Trust Co., Executor, v. U. S. (D. C.) 28 F.(2d) 205.

We are satisfied that the liability for the estate tax was fixed at the time of death and that the tax upon this estate accrued when Mr. Hodgkins died. Elaboration of our reasons for so concluding is unnecessary in view of the similar holdings of numerous courts. U. S. v. Ayer (C. C. A.) 12 F.(2d) 194; Flannery v. Willcuts (C. C. A.) 25 F.(2d) 951, 958; Page v. Skinner (D. C.) 293 F. 468, affirmed (C. C. A.) 298 F. 731; Boston

Safe Deposit & Trust Co. v. Nichols (D. C.) 18 F.(2d) 660, 661.

■ (b) Respondent contended that the presumption which arose (section 402(c)) by reason of the settlor's death within two years of the date of the execution of the trust agreement was not rebutted and controlled the disposition of the second question.

We are not satisfied that section 402(c) applies, for it does not appear that the property transferred constituted a "material part" of Hodgkins' property. But if we assume that section 402(c) does apply, we are likewise satisfied that the facts disclosed upon the hearing overcame the presumption upon which respondent relied. The Board of Tax Appeals found that Hodgkins "was about seventy or seventy-one years of age. He was apparently in good health and was actively engaged in his duties as president of the Brownell Improvement Company except that he occasionally took vacation trips. He had a house in Florida and usually spent one or two of the winter months there." There is not a single fact recited in the board's findings from which it could be inferred that Hodgkins executed the trust agreement because of some known infirmity which he believed or entertained a fear would, or might result in his death. See Flannery v. Willcuts (C. C. A.) 25 F.(2d) 951.

■ (c) What of the character of the trust agreement?

The transfer of the stock was "to the Trustee, irrevocably." The trustee "shall invest and reinvest all or any part of the principal" and "generally manage and control all of said trust property and all investments thereof in its absolute discretion without limitation," etc. Paragraph 4 provides that the net income shall be paid in quarterly installments to the donor until his death, and thereafter to his wife, if she survives him, during her life. Paragraph 5 provides that after the death of donor and his wife "the trust * * * shall not cease, and terminate but shall continue during the lifetime of the son of the donor," provided, however, that at the expiration of ten years from the death of the donor and his wife, the son, if living, may elect to take the trust fund and terminate the trust. At his death, if the son does not so elect, the fund is to be divided between the son's widow and his children according to the laws of descent of the state of Illinois.

Paragraph 6 reads as follows:

"No title in the trust estate hereby created or in the income accruing therefrom or in

its accumulations shall vest in any beneficiary hereunder during the continuance of the trust as to such beneficiary, and no beneficiary shall have the right or power to transfer, assign, anticipate, or encumber his or her interest in said trust estate or the income therefrom prior to the actual distribution thereof by the Trustee to such beneficiary."

The trust agreement was an irrevocable one. It is similar, in legal effect, to the trust agreements considered in May v. Heiner, 281 U. S. 238, 50 S. Ct. 286, 74 L. Ed. 826, 62 A. L. R. 1244, and Commissioner v. Northern Trust Co., Executor of Van Schaick (C. C. A.) 41 F.(2d) 732. The decisions in these two cases govern the decision of the similar question here presented.

In reaching this conclusion we have not overlooked paragraph 6 above quoted. The legal effect of this provision was to limit and restrict and perhaps postpone the beneficiary's full enjoyment of the fund transferred. It was not indicative of any control by the settlor during the life of the trust agreement. It in no way impeached the irrevocable character of the agreement. It did not evidence an intention on the settlor's part to make the transfer effective "in possession or in enjoyment at or after his death."

The order of the Board of Tax Appeals is reversed, with directions to proceed in accordance with the views here expressed.