### BULLARD v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 6120.

Circuit Court of Appeals, Seventh Circuit.

May 25, 1937.

Samuel S. Holmes and Lorentz B. Knouff, both of Chicago, Ill., for petitioner.

James W. Morris, Sewall Key, Norman D. Keller, and Arnold Raum, all of Washington, D. C., for respondent.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Petitioner, as executor of the last will and testament of Clara R. Smith, deceased, asks this court to reverse a decision of the Board of Tax Appeals affirming an assessment of deficiency in a federal estate tax in the sum of $17,271.46, assessed by the Commissioner against the estate of the deceased. The deficiency arose out of the action of the Commissioner in including in the gross value of the estate the corpus of a certain inter vivos trust agreement dated February 17, 1932. Mrs. Smith died testate on May 24, 1933.

On March 3, 1927 the decedent created an irrevocable trust of certain securities under which the income from the property was reserved to the donor during her lifetime; upon her death the trust estate was to be divided into three separate funds. The income therefrom was to be paid thereafter to the decedent's three children during their lives and after their deaths to her grand-

children until the youngest should attain the age of twenty-six, whereupon the funds were to be divided equally among the grandchildren. One of her children was a son, Edward A. Smith. The income from his representative portion of the trust fund was to be paid, in case of his death, to his widow during her lifetime, unless a child or children survived him, in which event income and principal were to go to such children. If no child survived Edward, upon his death and that of his widow, the principal of the trust funds of which he was beneficiary was to be paid one-half to the children of each of the decedent's two daughters. The son died on December 16, 1926, leaving a widow but no children, and upon his death, under the terms of the trust, his widow became entitled to the income from the trust fund of $100,000, subject to the life estate of the decedent.

In 1931 the decedent became dissatisfied with the trust arrangement; learned, as she said, for the first time, that the trust was irrevocable, but was advised by an attorney that it probably violated the rule against perpetuities and was, therefore, void, but that it was possible, because of the interest of minors, to dissolve the trust only by court decree. At first the widow of Edward refused to consent to termination or modification of the trust, but finally assented to a decree of dissolution, provided her rights should be preserved precisely as provided in the original trust agreement.

·Thereupon, in order to avoid family controversy, unpleasant litigation, and consequent undesirable notoriety, the interested parties entered into a parol agreement providing that, upon entry of a decree terminating the old trust, a new one would be created and that the corpus thereof would be the portion of the securities of which Edward and his widow were the beneficiaries under the old trust. As to that, she was to have the rights she possessed under the old trust, under which the income was to be payable to decedent during her life. It was agreed that the remainder of the original trust should be dissolved and that, in lieu thereof, the decedent would make a new will devising and bequeathing unto the minor beneficiaries larger property rights and that the new trust should be created prior to the entry of a decree dissolving the old one.

Accordingly a second trust indenture was executed on February 17, 1932 and the new will prepared. On the same date, the decedent wrote to the Continental Illinois Bank & Trust Company, trustee under both trusts, stating that she had filed her bill to cancel the original trust and to have it declared void, inoperative, and ineffective because in violation of the rule against perpetuities, saying that in her bill she was seeking a decree dissolving the trust because of its invalidity, adjudging that the trust agreement be destroyed, rendered void, and terminated in toto, ordering the trustee to account for, assign, transfer, and set-off to her all the property held in trust and decreeing that she hold and possess the same as her own and absolute property, free and clear of any right or claim in any other person. She further advised the trustee that she was creating a new trust; that she was selling and conveying to the trustee, acting as such under the new trust, the securities then held, representing the son's interest in the old trust, to hold under the new agreement; that she would pay the cost of the transfer; and that her rights to receive the income from the new trust and the rights of her son's widow therein should arise immediately upon extinguishment of the old trust.

On February 27, 1932, the court, with jurisdiction of the parties, found that the trust agreement, by reason of the violation of the rule against perpetuities, was wholly inoperative and ineffective as to one-third of the fund; that the decedent had intended and conceived the disposition of the whole of said trust fund as a single and connected distributive scheme and would not have created the trust had she known that any part thereof was void and that by reason of such facts the whole of the trust arrangement was destroyed and rendered void; that all assets and property held by the trustee were the decedent's own absolute property, free and clear of any trust and of any right, claim, or demand of any other party. The court directed the trustee to assign to the decedent all the trust funds.

The new trust provided that trustor "has sold, assigned, transferred, conveyed and delivered and by these presents does sell and assign the securities and property described in the schedules" to the trustee as such; that during the lifetime of the trustor, but only after the death of the son's widow, the trustor might alter the trust, change the beneficiaries, withdraw and receive all of the corpus of the trust, and wholly or partially revoke the trust. Mrs.

Smith was to receive the income from the new trust during her lifetime, and upon her death same was to be paid to the son's widow during her lifetime, and upon the death of both the decedent and the son's widow the trustee was directed to pay over all the principal of the estate to the decedent's two daughters.

All of the corpus of the old trust other than that included in the new trust was surrendered and delivered to the decedent or to her nominees.

The petitioner contends that under these facts no property of the decedent passed to the new trust; that under it she retained no interest not already vested in her under the first trust; that the creation of the second trust amounted to a bona fide and adequate sale for full consideration exempt under the statute. It becomes material, therefore, at the outset to determine the effect of the facts above stated.

■ It is to be observed that by the terms of the decree, the first trust was set aside and terminated and the corpus thereof adjudged to be the property of the decedent. True, she never received from the trustee the specific securities constituting the corpus of the second trust, but that was because she directed the trustee to transfer the same directly to the new trust. Under the decree of the court, the title of the corpus of the new trust, upon dissolution of the old trust, rested in her free of right, title, or claim of any other person. She was the absolute owner thereof, and it was her property that passed into the corpus of the new estate. Consequently there was no bona fide sale but rather a creation of a new trust out of her own estate.

■ But it is said that the decree was merely a consent decree based upon a family settlement. In Freeman on Judgments vol. 3 (5th Ed.) § 1350, it is said: "It is difficult to conceive upon what theory the action of the court in rendering judgment upon the agreement of the parties may be treated as not judicial and conclusive." In volume 3, (5th Ed.) § 1361, the writer says: "So a consent decree, conclusive where rendered, is conclusive in other states." In volume 2 (5th Ed.) § 663, it is said: "The same general rules which govern judgments generally apply to a judgment by consent or

upon stipulation. It is an estoppel, merger or bar under the same circumstances and to same extent as any other judgment." In Harding v. Harding, 198 U.S. 317, 25 S.Ct. 679, 684, 49 L.Ed. 1066, the court said: "The general rule in Illinois undoubtedly is that a consent decree has the same force and effect as a decree in invitum. Knobloch v. Mueller, 123 Ill. 554, 17 N.E. 696; O'Connell v. Chicago Terminal Transfer R. Co., 184 Ill. 308, 325, 56 N.E. 355." In Swift & Co. v. United States, 276 U.S. 311, 48 S. Ct. 311, 314, 72 L.Ed. 587, the court adhered to the rule in the following language: "But 'a decree, which appears by the record to have been rendered by consent is always affirmed, without considering the merits of the cause.' Nashville, Chattanooga & St. Louis Ry. Co. v. United States, 113 U.S. 261, 266, 5 S.Ct. 460, 28 L.Ed. 971. Compare United States v. Babbitt, 104 U.S. 767, 26 L.Ed. 921; McGowan v. Parish, 237 U.S. 285, 295, 35 S.Ct. 543, 59 L.Ed. 955. Where, as here, the attack is not by appeal or by bill of review, but by a motion to vacate, filed more than four years after the entry of the decree, the scope of the inquiry may be even narrower."

Accordingly we conclude that under the decree of the circuit court of Cook county Mrs. Smith became entitled to the corpus of the trust and that thereafter neither she nor any of the parties to that suit could deny the binding effect of the decree. Accordingly the new trust must rest upon its own ground and the rights of the petitioner must be determined thereunder.

The petitioner contends, further, however, that the trust was a complete gift inter vivos; that the interests of the beneficiaries vested therein as of the date of its creation and were not conditioned upon the death of the deceased; that such a gift cannot be the basis of an estate tax based upon the amount of the estate of the deceased at the time of her death, but that to include such a gift in her gross estate at the time of her death, is in violation of the Fifth Amendment to the Constitution.

The applicable statute section 302(c) of the Revenue Act of 1926 as amended by the Joint Resolution March 3, 1931, c. 454, 46 Stat. 1516, see U.S.C., title 26, § 411(c) see 26 U.S.C.A. § 411(c) appears in the footnote.[1] This act was later amended

---

[1] The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—* * *

(c) To the extent of any interest there-

·in 1932, subsequent to the death of Mrs. Smith, but, in view of our conclusions, such amendment is immaterial. The immediate question, therefore, is whether under this act the corpus of the trust estate should be included in the amount of the gross estate ·in determining the estate tax.

The federal estate tax is an excise upon the transfer of a decedent's estate which takes place as the result of his death. The event which gives rise to the tax is the death of the decedent, with the resulting transfer of his estate, either by will or the laws relating to intestacy. Helvering v. St. Louis Union Trust Co., 296 U.S. 39, 41, 56 S.Ct. 74, 75, 80 L.Ed. 29, 100 A.L.R. 1239; Heiner v. Donnan, 285 U.S. 312, 322, 52 S.Ct. 358, 359, 76 L.Ed. 772; May v. Heiner, 281 U.S. 238, 244, 50 S.Ct. 286, 287, 74 L.Ed. 826, 67 A.L.R. 1244; Nichols v. Coolidge, 274 U.S. 531, 537, 47 S.Ct. 710, 711, 71 L.Ed. 1184, 52 A.L.R. 1081. It is not · enough for the federal estate tax to attach that the transfer take effect before ·the death of decedent, but its taking effect must be dependent upon, and in some way effectuated by, his death. Shukert v. Allen, 273 U.S. 545, 47 S.Ct. 461, 71 L.Ed. 764, 49 A.L.R. 855. . The language of the Supreme Court's. decisions indicates rather clearly that an irrevocable inter vivos transfer, not made in contemplation of death, with remainders vested, at the time of the transfer, in persons other than the transferor, but with a reservation to the transferor of the income during his lifetime, is a transfer complete when made, is not one intended to take effect at his death, and is not testamentary in character merely because of the reservation of a life estate.

In Levy v. Wardell, 258 U.S. 542, 42 S. Ct. 395, 66 L.Ed. 758, where stock was transferred under an agreement whereby the transferee agreed to pay·all dividends to the transferor during his lifetime, the transferor .retaining no other rights in the stock, the court held that the transfer was not intended to take effect in possession or enjoyment at · or after the transferor's death, within the meaning of the law.

In Reinecke v. Northern Trust Company, 278 U.S. 339, 49 S.Ct. 123, 125, 73 L.Ed. 410, 66 A.L.R. 397, the court similarly ruled, saying that "the shifting of the economic interest in the trust property which was the subject of the tax was thus complete as soon as the trust was made." It was thus established that, for the death tax to attach, something must pass from settlor to beneficiary as a direct result of the settlor's death. Further enlightenment of just what is necessary is furnished by May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 287, 74 L.Ed. 826, 67 A.L.R. 1244, where, in dealing with an inter vivos trust, with a reservation of income in the donor for life, the court held that the property was not subject to the federal estate tax, notwithstanding the words of the statute, "in contemplation of or intended to take effect in possession or enjoyment at or after his death," saying: "The transfer of October 1, 1917, was not made in contemplation of death within·the legal significance of those words. It was not testamentary in· character and was beyond recall by the decedent. At the death of Mrs. May no interest in the property held under the· trust deed passed from her to the living; title thereto had been definitely fixed by the trust deed. The interest therein which she possessed immediately prior to her death was obliterated by that event."

Apparently the Supreme Court fixed as the determining test the question of whether the interests in the corpus of the property transferred are vested in the transferee at the time of the transfer or remain contingent until the time of the decedent's death. This rule was extended by the court to irrevocable transfers inter vivos, with reservation of income to the transferor for life in the following cases: Burnet v. Northern Trust Co., 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412; Morsman v. Burnet, 283 U.S. 783, 51 S.Ct. 343, 75 L.Ed. 1412; McCormick v. Burnet, 283 U.S. 784, 51 S. Ct. 343, 75 L.Ed. 1413.

In Coolidge v. Long, 282 U.S. 582, 51 S.Ct. 306, 75 L.Ed. 562, the court again held

---

in of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended· to take effect in possession or enjoyment ,at or after his death, including a transfer under which the transferor has retained for · his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property or .(2) the right to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth.

that the reservation of payment of income to the settlors during their lives did not operate to postpone the vesting in the remaindermen of the right of possession or enjoyment and that property so transferred could not constitutionally be taxed under a death tax statute. This rule was followed in Binney v. Long, 299 U.S. 280, 57 S.Ct. 206, 209, 81 L.Ed. ——, where the court said: "In Coolidge v. Long * * * it was held that the mere taking possession of that which had been vested in the beneficiaries for many years did not amount to a taxable occasion and constitutionally could not be so designated by the Commonwealth in view of the complete vesting of the beneficiaries' estates in remainder at the date of the execution of the deed."

Again, in Helvering v. St. Louis Union Trust Co., 296 U.S. 39, 56 S.Ct. 74, 75, 80 L.Ed. 29, 100 A.L.R. 1239, the court said: "When * * * section 302(c) [26 U.S. C.A. § 411 note] includes within the purview of section 301(a) [26 U.S.C.A. § 410 note] a transfer inter vivos 'intended to take effect in possession or enjoyment at or after his death,' it does so upon the theory that such a transfer in effect is testamentary; that is to say, a substitute for either a disposition by will or a passing in virtue of intestacy."

The court then quoted at length from the opinion in Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772, to show that, where no "interest in the property" involved in a given case passes "from the possession, enjoyment, or control of the donor at his death," there is no interest with respect to which the decedent has created a trust intended to take effect in possession or enjoyment at or after his death. Helvering v. Helmholz, 296 U.S. 93, 56 S.Ct. 68, 80 L.Ed. 76; Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35; Hodgkins v. Commissioner, 44 F.(2d) 43 (C.C.A.7), certiorari denied Burnet v. Hodgkins, 283 U.S. 825, 51 S.Ct. 350, 75 L.Ed. 1439.

■■ We conclude, therefore, that, as this trust was an irrevocable completed inter vivos gift; that, as the interests of the beneficiaries vested at the time of its creation, the estate of the deceased was thereafter deprived of the property passing to the trust estate and could no longer exercise control over the same; that, under the decisions quoted, such is not a testamentary transfer. It cannot be said, arbitrarily, to be in contemplation of death, for it does not depend upon the death of the transferor for creation of the rights of the beneficiaries. The language of the Supreme Court in Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 359, 76 L.Ed. 772, seems conclusive. There the court said:

"Section 301(a) of the Revenue Act of 1926 [26 U.S.C.A. § 410] imposes a tax 'upon the transfer of the net estate of every decedent,' etc. There can be no doubt as to the meaning of this language. The thing taxed is the transmission of property from the dead to the living. It does not include pure gifts inter vivos. The tax rests, in essence, 'upon the principal that death is the generating source from which the particular taxing power takes its being, and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested. * * * it is the power to transmit or the transmission or receipt of property by death which is the subject levied upon by all death duties.' Knowlton v. Moore, 178 U.S. 41, 56, 57, 20 S.Ct. 747, 753, 44 L.Ed. 969. The value of property transferred without consideration and in contemplation of death is included in the value of the gross estate of the decedent for the purposes of a death tax, because the transfer is considered to be testamentary in effect. Milliken v. United States, 283 U.S. 15, 23, 51 S.Ct. 324, 75 L.Ed. 809. But such a transfer, not so made, embodies a transaction begun and completed wholly by and between the living, taxable as a gift (Bromley v. McCaughn, 280 U.S. 124, 50 S.Ct. 46, 74 L.Ed. 226), but obviously not subject to any form of death duty, since it bears no relation whatever to death. The 'generating source' of such a gift is to be found in the facts of life and not in the circumstance of death. And the death afterward of the donor in no way changes the situation; that is to say, the death does not result in a shifting, or in the completion of a shifting, to the donee of any economic benefit of property, which is the subject of a death tax. Chase Nat. Bank v. United States, 278 U.S. 327, 338, 49 S.Ct. 126, 73 L. Ed. 405, 63 A.L.R. 388; Reinecke v. Northern Trust Co., 278 U.S. 339, 346, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397; Saltonstall v. Saltonstall, 276 U.S. 260, 271, 48 S.Ct. 225, 72 L.Ed. 565; nor does the death in such case bring into being, or ripen for the donee or any one else, so far as the gift is concerned, any property right or interest

which can be the subject of any form of death tax. Compare Tyler v. United States, 281 U.S. 497, 503, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758. Complete ownership of the gift, together with all its incidents, has passed during the life of both donor and donee, and no interest of any kind remains to pass to one or cease in the other in consequence of the death which happens afterward. * * * Whether the latter presumption [that such transfers were made in contemplation of death] be treated as a rule of evidence or of substantive law, it constitutes an attempt, by legislative fiat, to enact into existence a fact which here does not, and cannot be made to, exist in actuality. * * * This court has held more than once that a statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the Fourteenth Amendment."

See, also, Handy v. Delaware Trust Co., 285 U.S. 352, 52 S.Ct. 371, 76 L.Ed. 793.

To be sure, some of these decisions were by a divided court, but it is not for us to question the correctness of the rules enunciated. Estate taxes are upheld as succession taxes upon property transferred in contemplation of death, but these decisions hold that such transfers as the one before us are not testamentary and that Congress may not declare something in contemplation of death which is not in fact such, Heiner v. Donnan, supra; and that it may not label a transfer as testamentary which is not testamentary and that it may not so designate an inter vivos gift, title under which vests in the beneficiaries at the time of the creation, irrespective of the decedent's death.

But the government relies also upon the provision in the trust agreement that the decedent during her lifetime, but only after the death of her son's widow, had the right to alter or terminate the trust and to withdraw or demand possession of its corpus. This, it is said, destroys irrevocability and creates a contingency, and therefore prevents the present vesting of the estate in the beneficiaries. This question, we believe, is settled likewise by the decisions of the Supreme Court. Thus, in Klein v. United States, 283 U.S. 231, 51 S.Ct. 398,

75 L.Ed. 996, there was an inter vivos transfer by husband to wife of a life interest together with a remainder, contingent upon the transferee surviving the transferor. This was a contingent remainder, and the court held that, inasmuch as there was no vested title, the tax was proper, the estate being contingent, with a possibility of reverter which was removed by the death. In Helvering v. St. Louis Union Trust Co., 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29, 100 A.L.R. 1239, and Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L. Ed. 35, the same test was applied. There was a reservation of a contingent possibility of reverter in the settlor of a trust, should the beneficiaries predecease him, but the court held that this did not make the transfer in trust one intended to take effect in possession or enjoyment at or after his death, for, since death put an end to the grantor's interest, the possibility of reverter no longer existed. Klein v. United States, 283 U.S. 231, 51 S.Ct. 398, 75 L.Ed. 996, was a case where the remainder was purely contingent. The court pointed out the differences in Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772.

Again, in Commissioner, Helvering v. Wallace, 71 F.(2d) 1002 (C.C.A.2), the trust instrument created a life estate in the settlor, a remainder in the grantor's daughter, and a possibility of reverter to the grantor. The court held that under the rule in May v. Heiner, supra, the death of the grantor was not the generating source of definite accession to the survivor's property rights but merely the obliteration of the decedent's life estate and that the decedent's rights were fixed and vested upon the execution of the trust instrument.

It seems obvious, therefore, that this trust worked a complete transfer of the title of the decedent at the time of the creation of the trust, that it was then a complete gift inter vivos, and that the suggested possibility of reverter is not sufficient to destroy the complete character of the transaction.

We conclude, therefore, that the assessment of the deficiency tax was improper and the decision of the Board of Tax Appeals is reversed.