Immaculata GALLAGHER, also known as Lottie Gallagher, Appellant,

v.

Francis R. SMITH, Former Collector of Internal Revenue for the First District of Pennsylvania, and United States of America.

No. 11305.

United States Court of Appeals Third Circuit.

Argued Nov. 1, 1954.

Reargued Feb. 21, 1955.

Decided June 3, 1955.

Herman J. Obert, Philadelphia, Pa., for appellant.

Carolyn R. Just, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Carolyn R. Just, Sp. Assts. to Atty. Gen., W. Wilson White, U. S. Atty., on the brief), for appellee.

Before BIGGS, Chief Judge, and MARIS, GOODRICH, McLAUGHLIN, KALODNER, STALEY and HASTIE, Circuit Judges.

MARIS, Circuit Judge.

The issue presented on this appeal is whether all or only one-thirteenth of the net income of a trust fund created by the will of the plaintiff's deceased husband is taxable, for income tax purposes, against her. The dispute arises out of the following facts:

The testator, Edward A. Gallagher, a resident of Philadelphia, Pennsylvania, died on March 19, 1942, survived by his widow, who is the plaintiff, and thirteen children. By the terms of his will he created a trust during the lifetime of his widow or until her remarriage. In the event of her death or remarriage the estate was to be distributed among twelve

of his children, one son, Edward Gallagher, Jr., being expressly excluded from participation. The will, in pertinent part, provides as follows:

"One: I hereby devise, give and bequeath all of my estate, real and personal of whatsoever nature and wheresoever situated to my wife Immaculata, also called Lottie, and my attorney Louis Marion, Esquire as Trustees in Trust nevertheless to and for the following uses and purposes:

"A. To hold, invest, re-invest and to receive the income therefrom and distribute the same to my wife Immaculata also called Lottie, for her, benefit, maintenance and support and that of all my children living with her at the time during the term or period of her natural life or as long as she shall remain unmarried.

"B. Upon the death of my wife or if, as and when she remarries the balance of my estate, assets and property, with any accumulated income therefrom then in the possession and control of my said trustees shall be distributed in equal shares among my children and issue of all deceased children as may be living at the time fixed for the said distribution equally per stirpes except my son Edward Gallagher, Jr. who shall not in any way, manner or form be entitled to or share in my estate whatsoever.

"C. If at the time of such distribution to my children any of them shall be minors, then I hereby direct, appoint and designate my son Arthur and my daughter Rita to act as Guardians of the estate of said minors without their being required to furnish any bond or security for their faithful performance as such guardians, and with full power and authority given to them to hold, invest re-invest and distribute the income and principal thereof for the maintenance, welfare and support of such minor children in such sums

and amounts as to them shall seem fit and proper.

\* \* \* \* \* \*

"Four: I do further declare that all and any assets, income, property or estate herein devised and bequeathed to my said Trustees shall be during the period of the said Trust and until distribution and payment thereof is made to my children, in accordance with the terms thereof free and clear of any or all debts, contracts, transfers, hypothecations and anticipations of my wife or children and also free and clear of any and all debts, levies, attachments, executions and sequestrations in any proceedings against them."

At the time of the testator's death he owned an 85% interest in the partnership of E. A. Gallagher & Sons, which consisted of the testator and his son, Arthur A. Gallagher. By the terms of Paragraph Two of the will the testator authorized his trustees to continue his interest in the business and conferred upon them every power he might have possessed in respect thereto if living. Pursuant to this authorization the trustees and the surviving partner continued the business and the trustees received 85% of the net income therefrom. The entire net trust income for the taxable period from March 20, 1942 to December 31, 1942 was reported in the individual federal income tax return of the plaintiff. For the years 1943 through 1948 the plaintiff and twelve of testator's children (being all of his children except Edward, Jr.) each reported a one-thirteenth part of the income of the trust estate upon their individual income tax returns.

On December 2, 1947 the plaintiff executed a paper entitled "Confirmation of Release and Disclaimer" by which she confirmed her release, disclaimer and renunciation of all past, present and future interest as beneficiary of the trust or under the intestate laws of Pennsylvania in excess of one-thirteenth of the distributable trust income. On June 10, 1948, the first account of the trustees

was called for audit before the Orphans' Court of Philadelphia County, Pennsylvania. The account had been filed in order that its confirmation might provide a basis for the discharge of Louis Marion as a co-trustee under the will. Notice of the filing of the trustees' account and of the date of the audit was sent to the Internal Revenue Agent in charge at Philadelphia. On June 29, 1948 the Orphans' Court filed its adjudication confirming the account and awarding the balance of income for distribution in equal shares to the taxpayer "and testator's twelve children entitled under his will."

Assessments for deficiencies of income tax for the years 1943 through 1948 were made by the Commissioner of Internal Revenue against the plaintiff on his October, 1950 assessment list pursuant to a notice of deficiencies sent June 20, 1950. On November 14, 1950 the plaintiff paid under protest $600.00 on account of the deficiency assessment for each of the six years, a total of $3,600.00, and instituted the present action in the District Court for the Eastern District of Pennsylvania to recover this amount as an overpayment. She asserted that the Commissioner had assessed the deficiencies against her on the alleged ground that all of the distributable trust income was taxable to her and that the assessment was illegal because, as she contends, she was entitled by law to only a one-thirteenth share thereof which she had received and properly reported as taxable income. She also asserted that in any event she had released and disclaimed any greater interest in the trust estate. Furthermore she contended that her interest under the will had been adjudicated to be only a one-thirteenth share by the Orphans' Court of Philadelphia County which alone had jurisdiction of the estate and that its adjudication is conclusive.

The United States intervened as a party defendant in the present suit. It filed an answer and a counterclaim in which it asserted the deficiency assessments which the Commissioner of Internal Revenue had made against the plaintiff for the years 1943 through 1948. The assessments totaled $413,927.96; interest thereon totaled $76,820.42. A credit of $16,305.95 was given plaintiff for payments previously made, including the payment of $3,600.00 for which the plaintiff had brought this suit, leaving a balance of $474,422.43 for which the counterclaim was filed. Both parties moved for summary judgment. The plaintiff also moved for judgment on the pleadings.

The district court found that the plaintiff was entitled under the will to receive the entire net income of the trust estate, that her confirmation of release and disclaimer of interest in excess of a one-thirteenth share did not affect her tax liability because under the law of Pennsylvania the plaintiff, being a beneficiary under a spendthrift trust, could revoke the release and receive future income, and that the adjudication of the Orphans' Court of Philadelphia County was not binding on the district court because the proceedings were of a nonadversary nature. The motion of the defendants was accordingly granted, the complaint was dismissed, and judgment was entered against the plaintiff on the counterclaim in the amount, including interest, of $550,034.57. 119 F.Supp. 360.

The decision of the present case turns upon whether the adjudication by the Orphans' Court is to be given conclusive effect, taxwise, as to the interests of the plaintiff and the twelve children in the net income of the trust estate. Before considering this question some preliminary observations need to be made. The books are full of federal tax cases in which state court decisions have been refused controlling effect upon the ground that they were not res judicata in the federal tax case or because they were regarded as nonadversary or as in fact consent decrees or because they were obtained by collusion. But, as Mr. Paul points out in an excellent discussion of the subject,[1] there are at least three types

---

1. I Paul, Federal Estate and Gift Taxation, 1942, § 1.11.

of tax cases involved with respect to which the effect of state decisions may be quite different.

One. group of federal tax cases refuses to give state decisions conclusive effect in situations where Congress has imposed a federal criterion with respect to the taxability of income or property or the allowability of claimed deductions. For example, in ascertaining whether claims asserted against an estate "were contracted bona fide and for an adequate and full consideration in money or money's worth"[2] or where business expenses are sought to be deducted by a taxpayer as "ordinary and necessary"[3] the Tax Court is not bound by a state court decision with respect to whether the federal test of deductibility has been met. Another example is that of cases where income is taxed because, although disposed of under state law, it remains under the taxpayer's "unfettered command." In such case a state decision as to the legal rights of the parties is not controlling as to the incidence of the federal income tax.[4] There seems, however, to be a tendency in many cases of this sort to ignore the basic fact that the state decision did not and as against the United States could not determine whether the criterion laid down by the Internal Revenue Code had been met. Frequently the courts in rejecting the applicability of a state judgment have stressed its nonadversary or agreed character, thereby giving the unwarranted impression that if the judgment of the state court had resulted from a contested litigation it would have been conclusive on the federal question.

A second type of case is that in which the state decision does not involve a peculiar rule of federal tax law as in the type just discussed or a determination of the property rights of the parties as in the type about to be discussed but has merely made a determination of some other question of law or fact asserted to be involved in the federal tax case. If the United States was not a party to the state case it is perfectly clear that the decision in the state case cannot be res judicata against the United States or entitled to full faith and credit in the federal case, even though it may be entitled to consideration as declaratory of the state law. Since such a state decision is not entitled to be given the effect of res judicata its application may properly be rejected on that ground alone. Whether the state proceeding was adversary or nonadversary or the judgment was obtained by consent or even by collusion is, on principle, quite immaterial in such a case.

The third type of federal tax case in which a state decision is sought to be given effect is that in which a state court has determined the rights of the parties to income or other property involved in the tax litigation and the tax is imposed by the Internal Revenue Code solely upon the person entitled to the income or other property under the state law, the federal law having imposed no qualification upon or criterion for the taxability thereof. In other words Congress has made the operation of the tax law in such a case wholly dependent upon state law. In a case of this sort the state

2. Internal Revenue Code of 1939, § 812(b) (5), 26 U.S.C.A. § 812(b) (5); Internal Revenue Code of 1954, § 2053(c) (1) (A), 26 U.S.C.A. First-Mechanics Nat. Bank v. Commissioner of Internal Revenue, 3 Cir., 1940, 117 F.2d 127, 132 A. L.R. 1459, relied on by the government here and Goodwin's Estate v. Commissioner of Internal Revenue, 6 Cir., 1953, 201 F.2d 576, were cases of this sort.

3. Internal Revenue Code of 1939, § 23(a) (1) (A), 26 U.S.C.A. § 23(a) (1) (A); Internal Revenue Code of 1954, § 162(a), 26 U.S.C.A. Thomas Flexible Coupling

Co. v. Commissioner of Internal Revenue, 3 Cir., 1946, 158 F.2d 828, certiorari denied 329 U.S. 810, 67 S.Ct. 624, 91 L.Ed. 691, a case relied on by the government here was of this kind.

4. Corliss v. Bowers, 1930, 281 U.S. 376, 50 S.Ct. 326, 74 L.Ed. 916; Sewell v. Commissioner of Internal Revenue, 5 Cir., 1945, 151 F.2d 765; Loggie v. Thomas, 5 Cir., 1945, 152 F.2d 636, and Falk v. Commissioner of Internal Revenue, 3 Cir., 1951, 189 F.2d 806, which are relied on by the government here were cases of this kind.

judgment must be given conclusive effect in determining federal tax liability. Uterhart v. United States, 1916, 240 U.S. 598, 36 S.Ct. 417, 60 L.Ed. 819; Freuler v. Helvering, 1934, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634; Blair v. Commissioner, 1937, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Sharp v. Commissioner, 1938, 303 U.S. 624, 58 S.Ct. 748, 82 L.Ed 1087; Lyeth v. Hoey, 1938, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119. This is because the right to the income or other property sought to be taxed is created solely by state law. Since by hypothesis no federal qualification or criterion has been imposed and the tax is levied solely upon those in whom the state law has vested the title, the question can only be one of state law. An adjudication of such a question of title by a court of the state must accordingly be given effect, not because it is res judicata against the United States, but because it is conclusive of the parties' property rights which alone are to be taxed. So far as those parties are concerned the law of the state is what the state court has declared and applied in their case. If the state court's judgment has binding final effect under the state law the rights of the parties can only be what the court has held them to be. It is for this reason that the federal court should not in a case of this kind make an independent examination and application of state law. For if it reaches a different conclusion from the state court as to what the parties' rights should be under the state law its decision will not change those rights which will necessarily remain what the state court has declared them to be. What we have said is, of course, subject to the qualification that a state court has adjudicated the rights of all parties claiming interests in the income or property in question and that it had jurisdiction to do so. But in a case, such as the

one now before us, where the state court exercises jurisdiction in rem over the property[5] the question of jurisdiction ordinarily presents no problem, since all parties interested in the res are bound in such a proceeding whether they appear or not.[6]

The case now before us is of the type last described. The Internal Revenue Code imposed an income tax upon the plaintiff with respect to the income of the trust estate of her deceased husband only to the extent that it became her income payable to her as a beneficiary under the terms of the will creating the trust. The Code did not attempt to define or qualify her right; it merely imposed a tax upon her income, whatever it might be. Since the decedent was domiciled in Pennsylvania, all the interested parties reside there and the property of the decedent's estate, consisting largely of his interest in a Pennsylvania partnership, is located there, the effect of the will and the interest which the plaintiff received under it are to be determined by the law of that state. The plaintiff is, therefore, entitled to receive only such portion of the income of the trust as the will construed under Pennsylvania law accords her.

By the adjudication of the Orphans' Court of Philadelphia County, a court having jurisdiction in rem of the trust estate and judicial power to determine the rights of the parties interested therein,[7] it has been decided that the plaintiff has only a one-thirteenth interest in the trust income here sought to be taxed. That, therefore, is all the income of the trust in which she has any right, title or interest under the law of Pennsylvania, the law which, as we have seen, is the sole source of the right to income here sought to be taxed. It would, therefore, appear that under the rule laid down by the Supreme Court in the

5. Case of Broderick's Will, 1874, 21 Wall. 503, 509–510; 88 U.S. 503, 509–510, 22 L.Ed. 599; Cunnius v. Reading School District, 1903, 206 Pa. 469, 474–475, 56 A. 16, 18.

6. Henricksen v. Baker-Boyer Nat. Bank, 9 Cir., 1944, 139 F.2d 877; Eisenmenger v. Commissioner of Internal Revenue, 8 Cir., 1944, 145 F.2d 103, 156 A.L.R. 741.

7. In re Gould's Estate, 1921, 270 Pa. 535, 113 A. 552.

Uterhart, Freuler, Blair, Sharp and Lyeth cases, to which we may add our own cases of Sharpe v. Commissioner of Internal Revenue, 3 Cir., 1939, 107 F.2d 13, certiorari denied 309 U.S. 665, 60 S.Ct. 591, 84 L.Ed. 1013, and Commissioner of Internal Revenue v. Crawford's Estate, 3 Cir., 1943, 139 F.2d 616, the adjudication by the Orphans' Court of the plaintiff's interest in the trust income should have been followed by the district court in this case.

The district court held, and the Government urges here, that the rule to which we have referred does not apply when the state court proceeding is of a nonadversary character. Reliance is placed on three of our cases: First-Mechanics Nat. Bank v. Commissioner of Internal Revenue, 1940, 117 F.2d 127, 132 A.L.R. 1459; Commissioner of Internal Revenue v. Childs' Estate, 1945, 147 F.2d 368, and Falk v. Commissioner of Internal Revenue, 1951, 189 F.2d 806, certiorari denied 342 U.S. 861, 72 S.Ct. 89, 96 L.Ed. 648, and upon three cases from the Fifth Circuit: Sewell v. Commissioner of Internal Revenue, 1945, 151 F.2d 765; Loggie v. Thomas, 1945, 152 F.2d 636; and Saulsbury v. United States, 1952, 199 F.2d 578. The First-Mechanics Nat. Bank case is inapplicable, however, since it did not involve the determination by a state court of a property right but merely the deductibility of a claim against an estate in diminution of estate tax liability. Likewise the Falk, Sewell and Loggie cases are inapposite for the state court judgments were sought to be applied in each of those cases as conclusive of the question whether income was taxable to the taxpayer under the Internal Revenue Code because it was subject to his unfettered command, a criterion imposed by the federal law, while the Saulsbury case is similarly inapplicable since it also involved the applicability of a federal criterion rather than an adjudication of property rights.

The Childs' Estate case can be distinguished from the case now before us in that the question at issue in the federal court and which was urged to have been decided in the state court had not been presented to or considered by the latter court on the merits, its judgment having operated merely as a pro forma approval of what the parties had agreed upon. It therefore was in the nature of a consent decree. In our opinion in the case, however, we conceded that the state decree was binding upon the parties and determined their interests in the decedent's estate. Nonetheless we thought that since the state court did not give consideration to the question its decree was not binding on the Tax Court as to their interests, relying in this regard upon what was said in our previous opinion in the First-Mechanics Nat. Bank case. But, as now appears, that case, since it did not involve the state adjudication of taxable state property rights, was not controlling in the Childs' Estate case, which did involve such rights. Moreover, other courts have taken the view that a binding state judgment adjudicating property rights must be given conclusive effect in tax cases even though it was entered by consent,[8] and this appears to be the view of the Supreme Court.[9] To the extent, therefore, that our decision in Commissioner of Internal Revenue v. Childs' Estate is inconsistent with the views herein expressed it must be taken as overruled. The same must be said of inconsistent expressions in our opinions in the First-Mechanics Nat. Bank and Falk cases.

██ Whatever may be the case with respect to consent decrees, however, it

---

8. Bullard v. Commissioner of Internal Revenue, 7 Cir., 1937, 90 F.2d 144, 147, reversed on other grounds, Helvering v. Bullard, 303 U.S. 297, 58 S.Ct. 565, 82 L.Ed. 852. See also cases referred to in I Paul, Federal Estate and Gift Taxation, 1942, § 1.11, note 28, and 1946 Supplement.

9. Helvering v. Bullard, 1938, 303 U.S. 297, 300, 58 S.Ct. 565, 82 L.Ed. 852; Lyeth v. Hoey, 1938, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119; Helvering v. Safe Deposit & Trust Co., 1942, 316 U.S. 56, 62 S.Ct. 925, 86 L.Ed. 1266.

is clear that if the question at issue is fairly presented to the state court for its independent decision and is so decided by the court the resulting judgment if binding upon the parties under the state law is conclusive as to their property rights in the federal tax case, regardless of whether they occupied adversary positions in the state court or were all on the same side of the question. It is clear, as suggested by the Supreme Court in the Freuler and Blair cases, that a state judgment obtained by collusion to defeat a federal tax need not be given conclusive effect in a suit in a federal court involving that tax. And the non-adversary character of a state suit is undoubtedly relevant as evidence of such collusion. But we think that the fact that the parties all favored the same result in the state court is relevant only so far as it is evidence of collusion and should not in and of itself vitiate in the federal court such conclusive effect as the state law gives to the judgment with respect to the property rights determined by it. For if in the absence of fraud such a judgment does determine the rights of the parties in the property they must thereafter live with it so far as their enjoyment of the property is concerned. It is certainly logical, therefore, that such taxation as is based solely upon the ownership of the property should follow such a judgment.

Furthermore we think that our conclusion is soundly based in public policy. For it is quite common and highly commendable for all the members of a family group interested in a decedent's will to take a common view as to their rights under it, thus promoting family harmony and preventing that unseemly and disturbing spectacle, a family fight over a deceased relative's property. It is certainly quite proper for the persons interested in a trust estate thus frankly to express to the court which has jurisdiction a common view as to the correct legal solution of any questions which exist as to their rights in the trust. If the questions are fairly posed to the court and the tribunal is left free to decide them according to its own independent judgment it should not be necessary for the parties to take formal adversary positions and engage in legal shadow boxing in order that the judgment of the court should have conclusive effect, tax-wise as well as propertywise.

An examination of the state court proceedings involved in the Blair case[10] in which the Supreme Court gave the state judgment conclusive effect indicates that the adversary positions of the parties were no more than formal. The state suit involved in that case was a bill in chancery brought in the Superior Court of Cook County, Illinois, by trustees under a will to secure construction of the will and advice as to whether they should pay net income to the assignees of a beneficiary under it. The beneficiary and his assignees were made defendants. The beneficiary, the party whose interest was adverse to his assignees, did not enter an appearance, however, or oppose the assignees' position. From a decision by the Superior Court adverse to the assignees the latter appealed and secured a reversal. Blair v. Linn, 274 Ill.App. 23. Of this proceeding the Circuit Court of Appeals said, Commissioner of Internal Revenue v. Blair, 7 Cir., 1936, 83 F.2d 655, 657:

"There is that which suggests a friendly suit to avoid taxes, to which there was no opposition or adverse party. All who joined in the litigation were desirous of obtaining the same end—the avoidance of a large part of the Federal income tax through division of the income by the beneficiary among his children. The Government was not a party to that suit. The suit was prosecuted only until a favorable decision was reached and then no appeal was taken. The first court ruled adversely to the complainants. On appeal a favorable decree was entered. There was no one interested in taking

10. 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465.
The facts are stated more fully in the opinion of the Board of Tax Appeals in the case, 31 B.T.A. 1192.

the case to the Illinois Supreme Court and the litigation ceased. In other words it was not unlike a consent decree."

Likewise in our cases of Sharpe v. Commissioner of Internal Revenue, 1939, 107 F.2d 13, certiorari denied 309 U.S. 665, 60 S.Ct. 591, 84 L.Ed. 1013, and Commissioner of Internal Revenue v. Crawford's Estate, 1943, 139 F.2d 616, as well as in the cases of Bullard v. Commissioner of Internal Revenue, 7 Cir., 1937, 90 F.2d 144, reversed on other grounds Helvering v. Bullard, 303 U.S. 297, 58 S.Ct. 565, 82 L.Ed. 852; Henricksen v. Baker-Boyer Nat. Bank, 9 Cir., 1944, 139 F.2d 877, and Eisenmenger v. Commissioner of Internal Revenue, 8 Cir., 1944, 145 F.2d 103, 156 A.L.R. 741, state judgments were held conclusive although none of them involved proceedings which were adversary in any real sense. We think the necessary conclusion is that whether the proceeding was adversary or nonadversary is not the test of conclusiveness in these cases but rather whether the judgment is an adjudication by the state court of a property right upon which solely the federal tax is imposed, which adjudication was and is final and binding upon the parties under the state law, and which was not obtained by collusion for the purpose of defeating the tax.

 In the present case the Orphans' Court adjudicated the respective rights of the plaintiff and the twelve children in the income of the trust estate. There is no allegation of collusion. It appears that the questions whether or not the plaintiff and the twelve children were each entitled to a one-thirteenth interest in the income under the will or under the plaintiff's renunciation were fairly presented to the Orphans' Court for its adjudication.[11] Both were solely questions of Pennsylvania property law.[12] The adjudication of the court shows that it gave its independent consideration to the questions. Its decision that the plaintiff had but a one-thirteenth interest was binding upon her and determined under the law of Pennsylvania her interest in the trust.[13] Indeed the Government does not controvert this. On the contrary its contention is that the Orphans' Court incorrectly construed the will and erred, in the light of the decision of the Pennsylvania Supreme Court in In re Borsch's Estate, 1949, 362 Pa. 581, 67 A.2d 119, in holding the plaintiff's disclaimer to be valid and effective. It is not for the federal courts to review the Orphans' Court's decision on these questions of Pennsylvania law, however. That decision has long since become final. If it was erroneous it could have been corrected on appeal but it may not now be denied full faith and credit, with respect to the property rights which it adjudicated, merely because it is thought to be wrong.[14] For the reasons which we have stated the adjudication by the Orphans' Court of the plaintiff's interest

11. The questions were presented for adjudication in accordance with the rules of the Orphans' Court, in the following form:

"(1) Have testator's widow and twelve children (Edward A. Gallagher, Jr., the oldest of testator's thirteen children, having been expressly excluded by testator from any share of the estate) each been entitled to an equal share of the Trust income under the provisions of the testator's Will, all of the children having resided continuously with their mother except while serving in the Military or Naval Forces of the United States?

"(2) Did not each of the twelve children become legally vested with the right to receive a $1/13$ share of the net income, independently of the Will, by reason of

the widow's admitted disclaimer and renunciation of any interest in the trust estate in excess of a $1/13$ share of the net income?"

12. Pennsylvania law recognizes the general rule that a renunciation of a testamentary gift may prevent the gift from ever taking effect and leave the donee without any interest in the property or liability in connection therewith. In re Bute's Estate, 1946, 355 Pa. 170, 49 A.2d 339.

13. In re Lafferty's Estate, 1911, 230 Pa. 496, 79 A. 711; In re Schroeder's Estate, 1945, 352 Pa. 170, 42 A.2d 617.

14. Milliken v. Meyer, 1940, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278.

in the trust should have been given conclusive effect in the present case and the district court should not have given independent consideration to that question.

The judgment of the district court will be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

McLAUGHLIN, Circuit Judge (concurring).

I agree with the basic legal principle of the majority opinion that a state property right adjudication is controlling on the Commissioner of Internal Revenue and that the decisions of this circuit should be clarified regarding it. But I do not consider that this tax avoidance, streamlined passing of an account is exactly the type of case to carry the pronouncement. And I think it apparent the state judge here did not decide the rights involved apart from the release and disclaimer.[1] However, because of the presence of the latter I concur in the result.

KALODNER, Circuit Judge (dissenting).

These principles are well-settled:

Where, in a state where the assignment is revocable, the beneficiary of a spendthrift trust makes an assignment of income payable to him under its terms, the circumstance that the assigned income was paid directly by the trustees to the assignee does not relieve the beneficiary from liability to pay the income tax imposed by law on such income.[1]

Under Pennsylvania law an assignment by a beneficiary of income payable to him under the terms of a spendthrift trust is revocable at any time; in other words the beneficiary of a spendthrift trust cannot irrevocably assign or disclaim his trust interest.[2]

The will under which the plaintiff was named a beneficiary became effective on March 19, 1942, and the trust clearly had become operative since the taxpayer reported all the trust income *as her own* for the year 1942. Consequently, the testamentary trust here involved comes squarely within settled Pennsylvania law. It is clear therefore that the plaintiff's disclaimer could not operate to divest her irrevocably of her full trust interest.

The propositions contained in the foregoing paragraphs are, for me, dispositive of the case and require an affirmance of the judgment of the District Court.

The majority does not find these propositions material to this appeal because

---

1. The pertinent portion of the state court opinion reads:

 "In the opinion of the Auditing Judge, the distributions of income shown by the account and the proposed future distributions are not inconsistent with the directions in decedent's will and there can be no question of the right of the widow to disclaim or to renounce any beneficial interest to which she may be entitled under the will of her husband."

1. St. Louis Union Trust Co. v. United States, 8 Cir., 1944, 143 F.2d 842; King v. United States, 1 Cir., 1936, 84 F.2d 156; IT 4035, C.B. 1950-2, p. 6 (applying the principle to Pennsylvania law).

2. "When the beneficiary makes an assignment of *future* income and directs the trustee to pay such income to the assignee, such an assignment, in the case of spendthrift trusts, is invalid in the sense that it can be revoked at any time by the beneficiary, but, unless and until so repudiated, it constitutes a valid authority to the trustee to make payments of the successively accruing installments on income to the assignee." In re Keeler's Estate, 1939, 334 Pa. 225, 231, 3 A.2d 413, 416, 121 A.L.R. 1301.

 This principle was reaffirmed in Re Borsch's Estate, 1949, 362 Pa. 581, 67 A. 2d 119. The Act of June 1, 1945, P.L. 1337, 68 P.S. § 581 et seq. provided for the release or disclaimer of property or income therefrom, irrespective of spendthrift provisions. The Act was held unconstitutional as applied to operating spendthrift trusts created prior to its enactment. In the course of its opinion the Court stated: "While the life tenant may *presently* decline spendthrift income (which in the interim may be distributed to others under the terms of the will or by law), it may subsequently develop that the creator of the trust was wiser than the beneficiary who may thereafter desire to repudiate her release and renunciation and receive *future* income." 362 Pa. at page 589, 67 A.2d at page 123.

it holds that regardless of the applicable Pennsylvania law on the assignability of spendthrift trust interests, the Orphans' Court has *in fact* ruled that the plaintiff irrevocably divested herself of all but a one-thirteenth interest in the trust. If the Orphans' Court had so held I would agree that the plaintiff would not be taxable on the "disclaimed" interest.[3]

I do not, however, agree that this is the interpretation to be placed upon the disposition of the Orphans' Court.

In my view that Court merely confirmed the trustees' account and did not adjudicate the plaintiff's property rights in the trust.

With respect to the plaintiff's interest created by the will the Orphans' Court stated only that "the distribution of income shown by the account and the proposed future distributions *are not inconsistent* with the directions in decedent's will * * *." (Emphasis supplied.) Since under the will the plaintiff was requested, in precatory language, to provide funds for the "maintenance and support" of his children, an outright gift of income to them by the plaintiff would not be "inconsistent" with the testator's disposition. There is no intimation by the Orphans' Court that by the will itself any interest was vested in the children.[4] Nor did the Orphans' Court rule that the plaintiff had irretrievably disclaimed all but a one-thirteenth interest in the trust. The Court's statement that "there can be no question of the right of the widow to disclaim or to renounce any beneficial interest to which she may be entitled under the will of her husband" must be read to

mean that the plaintiff could if she wished divert *her* income to the children. Were the quoted statement to be read as meaning that the plaintiff had power to dispose irrevocably of her beneficial interest it would constitute a clear misreading of the Pennsylvania law. The Court merely held that the plaintiff could assign her income to her children and that this assignment would continue to be effective until withdrawn. The "right" of the plaintiff to disclaim, referred to by the Orphans' Court, must be interpreted to mean that the plaintiff could give the trustee *revocable* authorization to pay income to the assignee.

The Orphans' Court disposition must be viewed against the background of well-settled practice therein, of which we can take judicial notice, that amicable intra-mural family arrangements relating to distribution of estate and trust income and property be confirmed as a matter of public policy.

As stated in Re Way's Estate, 1954, 379 Pa. 421, 437, 109 A.2d 164, 172, "Family agreements or settlements are favorites of the law and when fairly made will not be disturbed. In re Edelman's Estate, 336 Pa. 4, 6 A.2d 511, 8 A.2d 799."

This settled practice strengthens my conviction that the Orphans' Court did not purport, in the instant case, to adjudicate property rights but merely followed its practice of refusing to disturb distributions to which all parties in interest had assented.

Since the plaintiff has therefore always had complete control of the "disclaimed" interest, in that she could at all times

---

3. Blair v. Commissioner, 1937, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Milliken v. Meyer, 1940, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278.

4. It is difficult to perceive how such a construction could be made. In re Cunningham's Estate, 1940, 340 Pa. 265, 272, 16 A.2d 712, 715, states the applicable Pennsylvania law: "The general rule is that expressions for the support or maintenance of a beneficiary and the sup-port, instruction and education of the beneficiary's children are considered explanatory of the object of the gift and not as vesting any interest in the children referred to; they are regarded as explanations of the motive for making the gift and not as limitations of it. See Schuldt v. Reading Trust Co., 292 Pa. 327, 330, 141 A. 152; Paisley's Appeal, 70 Pa. 153, 158; Cox v. Rogers, 77 Pa. 160, 165; Jauretche v. Proctor, 48 Pa. 466, 471."

have revoked her authorization to the trustees, she is in accordance with the authorities cited, taxable for all the income attributable to that interest.

For the reasons stated I would affirm the judgment of the District Court.