Grafton Probate Court,
No. 4833.

## In re William G. Barnhart Estate.

Argued April 6, 1960.

Decided June 27, 1960.

*Nighswander, Lord & Bownes,* and *Robert G. Wakefield (Mr. Nighswander* orally), for the petitioners.

*Louis C. Wyman,* Attorney General and *Frederic T. Greenhalge,* Assistant Attorney General *(Mr. Greenhalge* orally), for the State.

KENISON, C. J.   The major issue in this case is concisely stated in Casner, Estate Planning (2d ed.) 1956 and 1959 supp. *p.* 55, note 25, in the following language: "Will the surviving spouse's share be based on what is left after payment of debts, funeral and administration expenses, and the estate tax, or on what is left after the payment of debts, funeral and administration expenses but before the payment of the estate tax." The cases are conflicting as appears from the citations in Casner, *pp.* 22, 55 and anno. 37 A. L. R. (2d) 7, 56. See Sutter, How to Plan for Apportionment of Estate Taxes (1955 and 1959 supp.) in 2 Lasser, Estate Tax Techniques 2137 (1959). This conflict is due in part to differences in testamentary clauses and variations in state statutes controlling the apportionment of estate taxes and rights of a surviving spouse to elect to take against the provisions of a will.

When the widow waived the provisions of her husband's will she was entitled by statute to $7,500 and one-half the remainder above

that sum from his personal estate "remaining after the payment of debts and expenses of administration." RSA 560:10 II. The meaning of this statute is a matter of state law and not federal tax law. *Riggs* v. *Del Drago,* 317 U. S. 95; note, The Role of State Law in Federal Tax Determinations, 72 Harv. L. Rev. 1350 (1959); 2 Rabkin and Johnson, Federal Income, Gift and Estate Taxation, s. 53.04 (5) (1958).

The binding effect of state court decisions for federal tax purposes in the construction of wills and the interpretation of state statutes regulating the devolution of property is well established. *Babcock's Estate* v. *Commissioner,* 234 F. 2d 837 (3d Cir. 1956); Oliver, The Nature of the Compulsive Effect of State Law in Federal Tax Proceedings, 41 Calif. L. Rev. 638 (1953). See *Gallagher* v. *Smith,* 223 F. 2d 218 (3d Cir. 1955). There is some authority for an exception to this general rule if the probate proceedings are nonadversary. *Merchants Nat'l Bank & Trust Co.* v. *United States,* 246 F. 2d 410 (7th Cir. 1957). Whatever the effect of this exception may be, it has no application to the present case since the proceedings in it are devoid of any semblance of collusion and are truly adversary in character. See Northrup, The Marital Deduction: The *Street* Case and The Need for Indiana Legislation, 34 Notre Dame Lawy. 195 (1959).

In this state the widow's statutory share in personal property "remaining after the payment of debts and expenses of administration" is $7,500 and one-half the remainder. RSA 560:10 II. The state taxing authorities contend that the federal estate tax is either a debt or an expense of administration within the meaning of RSA 560:10 II and in any event should be treated as one or the other in computing the marital deduction. U. S. Int. Rev. Code of 1954, s. 2056. *Cf. Amoskeag Trust Co.* v. *Dartmouth,* 89 N. H. 473. While the federal estate tax constitutes a lien on the gross estate which in all events must be paid, it is not a debt within the meaning of RSA 560:10 II. The payment of debts under this section refers to debts of the testator such as real estate taxes, income taxes and other obligations incurred by the deceased before his death. See *In re Grondin Estate,* 98 N. H. 313, 316. This meaning is indicated by RSA 554:19 IV which gives priority over legacies to the "just debts owed by the deceased." Nor are federal estate taxes considered to be "expenses of the administration" in this state. The frequent practice of attorneys in providing in wills that federal and state taxes shall be paid "*as* an expense of

administration" is an indication that the federal estate tax is not in the same category as the executor's and his attorney's fees, commissions and probate expenses generally in this state. We conclude that the payment of the federal estate tax is not a debt or an expense of administration in computing the widow's share under RSA 560:10 II.

By the twenty-third paragraph of the will the testator provided that "transfer, inheritance, legacy, succession and estate taxes that may be imposed in any jurisdiction" should be paid out of the residuary estate and this was not limited to bequests in the will but also included taxes "upon any part of my estate." This was a testamentary declaration of a purpose to charge the residue with the payment of estate taxes upon any part of his estate whether transferred by probate or *inter vivos*, and whether passing as testate or intestate. This he had a right to do under state law. Although New Hampshire is one of the few states that have enacted the Uniform Estate Tax Apportionment Act (RSA ch. 88-A (supp.), Laws 1959, c. 158), this Act applies only to decedents dying after October 1, 1959, and has no application to this case. See Scoles and Stephens, The Proposed Uniform Estate Tax Apportionment Act, 43 Minn. L. Rev. 907 (1959). The limited equitable apportionment of estate taxes in certain cases required by RSA ch. 88 does not apply here because of the exception contained in RSA 88:2 that it is not effective "in any case in which a testator otherwise directs or provides in his will." 95 Trusts and Estates 898 (1956).

The further contention is made that the widow by waiving the will and taking her statutory share cannot receive any benefit or rights under the will direct or indirect, state or federal, taxwise or otherwise. This sweeps with too broad a brush. The fact that the testator designated his wife as co-executor and co-trustee is not changed because she took her statutory rights rather than her testamentary bequests. Anno. 71 A. L. R. 665. If a provision of the will in the widow's favor is ineffective because of a widow's renunciation of such provision, it does not follow that other provisions of the will lose their efficacy. *Jacobs* v. *Bean*, 99 N. H. 239. If it may be to the widow's financial advantage to take her statutory share, she is not to be penalized by taxation or otherwise for taking a course of action which the state law expressly allows. In the post-mortem quietude of the testator's easy chair it is always facile to do some Sunday morning quarterbacking by saying

what the testator could have provided in his will for the specific contingency of a widow's waiver of the will. A better formula could have been used but we think that the twenty-third clause of the will in its administrative provisions for the payment of taxes was adequate to take care of the payment of all death taxes, state and federal, upon all transfers, including that portion of the estate that passed to the widow by operation of state law. See Casner, How to Use Fractional Share Marital Deduction Gifts, 99 Trusts and Estates 190 (1960). Westfall, Estate Planning and the Widow's Election, 71 Harv. L. Rev. 1269 (1958).

While, as already indicated, the decisions of other jurisdictions are conflicting we conclude that the construction of this will and the applicable state law (RSA 560:10 II) requires the answer to the first transferred question to be that the widow takes her statutory share after the payment of debts and expenses of administration without the inclusion of federal estate taxes in expenses of administration. Kramer, Federal Estate and Gift Taxation in 1957 Annual Survey of American Law 161, 175-176. *Pitts* v. *Hamrick*, 228 F. 2d 486 (4th Cir. 1955); Casner, Estate Planning (2d *ed.*) 1956 and 1959 supp., 55, note 25; 2 Beveridge, Law of Federal Estate Taxation, *s.* 14.10 (1959 supp.); 33 Conn. Bar J. 397 (1959); 1 Lasser, Estate Tax Techniques, *pp.* 101, 113-116 (1959 supp.).

The second transferred question is whether any portion of the federal estate taxes are to be apportioned to or charged to the share of the widow. Both parties agree that the answer to this question is "no" and we see no occasion to consider it further.

*Remanded.*

All concurred.