WILLIAM W. WATSON, SCHUYLER E. TYLEE AND UNITED STATES TRUST COMPANY OF NEW YORK, *ETC.*, PLAINTIFFS-RESPONDENTS, v. FRED BROWER, GEORGE PIPLING AND JACQUES WOLF & CO., DEFENDANTS-RESPONDENTS, AND PASSAIC-CLIFTON NATIONAL BANK AND TRUST COMPANY, *ETC.*, DEFENDANT-RESPONDENT AND CROSS-APPELLANT, AND JOSEPH LANG, VARIOUS DEFENDANTS DESIGNATED AS CLASS I AND VARIOUS DEFENDANTS DESIGNATED AS CLASS II, DEFENDANTS-APPELLANTS.

Argued March 25, 1957—Decided May 6, 1957.

*Mr. Milton B. Levin* argued the cause for defendants-appellants (*Mr. Calvin Chenkin,* on the brief).

*Mr. Ernest F. Keer, Jr.,* argued the cause for plaintiffs-respondents (*Messrs. Boyd, Dodd, Keer & Booth,* attorneys; *Mr. Ernest F. Keer, Jr.,* of counsel; *Mr. Charles B. Alling,* on the brief).

*Mr. Irving Lloyd Gang* argued the cause for all defendants-respondents, and cross-appellant (*Messrs. Gardner & Williams,* attorneys; *Mr. Walter F. Hoffman,* on the brief).

The opinion of the court was delivered by

WEINTRAUB, J. The executors and trustees under the will of Jacques Wolf filed a complaint in the Chancery Division seeking construction of provisions creating a trust for the benefit of employees of Jacques Wolf & Co., a corporation. The will directs payment of a pension of $125 per month to employees who theretofore retired or thereafter retire after serving 25 years with the company. The issue is whether an employee who voluntarily quits after such period of service is entitled to take. Initially plaintiffs were of the view that he is and some payments were made on that basis, but a doubt thereafter ensuing, plaintiffs brought this action.

Three alternative constructions are advanced: that an employee with 25 years of service (1) is entitled to benefit even though he quits; (2) may benefit only if at the time of severance he is entitled to payments under the social security law; and (3) may benefit only if retired by the company. The trial court adopted the second view. We certified the appeal on our motion before consideration of it by the Appellate Division.

The will was executed on April 2, 1946. Mr. Wolf passed away on January 26, 1954. The provision here involved reads in part:

"Clause (5) Forty percent (40%) thereof to my Trustees hereinafter named, in trust, however, for the following purposes: To hold the same until the death of the last survivor of the following described persons, namely, my chauffeur, Fred Brower, my friend, Jerome Payet, all persons who at the time of my death are employees of Jacques Wolf & Co., all former employees of Jacques Wolf & Co. who retired prior to my death after having served for twenty-five (25) or more years with Jacques Wolf & Co., and the wives of all such employees and retired employees who had been married to them for at least twenty (20) years at the time of my death; to invest and keep the same invested and to make the following payments therefrom:

SUBDIVISION (a) To each employee of Jacques Wolf & Co. who is employed by it at the time of my death and who may hereafter retire after having served with said Company for at least twenty-five (25) years and to my friend, Jerome Payet, regardless of his years of service with said Company, a pension for life of One hundred twenty-five Dollars ($125.) a month, the first payment to be made thirty (30) days after retirement.

SUBDIVISION (b) To each former employee of Jacques Wolf & Co. who has retired after twenty-five (25) or more years of service with said Company, and to my chauffeur, Fred Brower, a pension for life of One hundred twenty-five Dollars ($125.) a month, the first payment to retired employees to be made thirty (30) days after the admission to probate of my will, and the first payment to Fred Brower to be made upon his attaining sixty (60) years of age or, should he attain sixty (60) years of age prior to my death, thirty (30) days after the admission to probate of my will. Should Jerome Payet, hereinabove mentioned in Subdivision (a) hereof, retire from Jacques Wolf & Co. prior to my death, then his pension shall commence thirty (30) days after the admission to probate of my will.

SUBDIVISION (c) To the widow of any former employee who is receiving a pension from this trust at the time of his death,

provided that she had been married to such employee for at least twenty (20) years prior to my death, a monthly pension for life of One hundred twenty-five Dollars ($125.).

For the purpose of this will employees of Jacques Wolf & Co. shall be construed to exclude officers and directors of the Company.

In the event that any of the persons entitled to receive pensions under Subdivisions (a), (b) and (c) of this Clause shall receive any pension or retirement allowance from Jacques Wolf & Co. as a result of the establishment by said Company of a pension plan, which pension or retirement allowance is payable in regular instalments during the life of such person, then such person shall only be entitled to receive the difference, if any, between the amount received from the Company's plan and One hundred twenty-five Dollars ($125.) per month. In addition, all pensions hereinabove directed to be paid by Subdivisions (a), (b) and (c) of this Clause shall be further reduced by any amounts received by the persons entitled to pensions hereunder on account of Social Security Benefits, it being my intention that all such persons shall, except as otherwise hereinafter provided, only be entitled to receive from this trust estate the difference, if any, between regular monthly payments from Social Security Benefits, and Jacques Wolf & Co. retirement benefits, and the sum of One hundred twenty-five dollars ($125.) a month.

 *  *  *  *  *  *  *  *

Any person entitled, pursuant to the provisions of this Clause (5) to receive any pension shall forfeit his or her right to receive the same in the event that he, or she, should at any time commence any legal proceeding or action of any nature whatsoever against either me, my estate or Jacques Wolf & Co. or in the event that he, or she, after retirement from Jacques Wolf & Co. should take any position or engage in any activity which, in the opinion of the management of Jacques Wolf & Co., is in conflict with the interests of the Company. Except as hereinabove expressly provided to the contrary, any retired employee may freely accept other employment or engage in other remunerative activities without suffering loss of, or diminution in the amount of his or her pension under this Clause (5).

For the purpose of determining when a pension is payable to any employee or retired employee of Jacques Wolf & Co., or to a surviving widow of such person, and for the further purpose of determining the amount thereof, my Trustees are expressly authorized to obtain all the necessary information from the management of such Company, and they shall be fully protected with respect to all pensions from time to time paid, or for the discontinuance of pension payments by reason of forfeiture, in reliance upon written statements signed by an officer of the Company."

Provision is made for the payment of excess annual income to the trustee of an *inter vivos* trust, referred to hereinafter;

for the use of the principal of the testamentary trust if income be insufficient; and for a gift over to the trustees of the *inter vivos* trust of the balance of principal and income (less a total of $6,000 payable to three hospitals) "upon the death of the last survivor" of the employees and widows for whom the trust was created.

Appellants, on behalf of employees at the date of testator's death who may retire after 25 years of service and on behalf of the widows of such employees, contend the will is unambiguous and hence there is no room for construction. *Rosencrans v. Fry,* 12 *N. J.* 88, 96 (1953). Their thesis is that "retire" includes termination upon the unilateral decision of an employee. Dictionary definitions support the meaning thus advanced. But words must be considered in the context in which they appear. *National State Bank of Newark v. Stewart,* 135 *N. J. Eq.* 603, 605 (*E. & A.* 1944). Here the context is a pension plan based upon service rendered, and in such matters "retire" has acquired another signification in business parlance, to wit, the termination of employment with the approval of the employer given in advance upon a prescribed basis or by action in individual cases. Hence the word "retire" cannot be said to have the unequivocal meaning appellants urge. And the term "retired employee" in the will is affirmatively expressive of the business usage just stated. Although one who quits to do like or equal work elsewhere may be said to have retired in the broadest sense of that word, he would hardly be described as a "retired employee." Rather, the latter expression when used in relation to pensions ordinarily connotes one who has ended his regular activity because of age or health by arrangement with his employer.

The intention of the testator, of course, controls, and it must be found in the will he made. The will, however, must be read in the light of the circumstances which surrounded the testator at the time of its execution as an aid in revealing what in truth he intended. *In re Armour's Estate,* 11 *N. J.* 257 (1953); *In re Fox' Estate,* 4 *N. J.* 587

(1950); *Blauvelt v. Citizens Trust Co.*, 3 *N. J.* 545 (1950). The trial court therefore properly admitted pertinent proof to that end.

The circumstances repel the interpretation that Mr. Wolf intended an annual pension to those who quit despite good health and continuing full usefulness.

Mr. Wolf was a seasoned industrialist. He had personally guided this successful company. He had established an *inter vivos* trust for the benefit of employees in 1923. Hence he appreciated the economic aspects of a plan both in terms of its fiscal feasibility and in terms of its impact upon the company. He was interested in the welfare of the employees. He was also interested in the welfare of the company, holding 4,182 of the 5,949 shares outstanding.

The *corpus* of the trust here involved consists of some of his shares in the company and a small amount of cash. Mr. Wolf gave certain officers ten-year options to buy all of the shares. If they exercise the options, the *corpus* of this trust will ultimately be about $350,000 after augmentation by a gift over to the trust upon the termination of another trust.

In his lifetime Mr. Wolf kept himself informed with respect to the number of employees, their length of service and ages. As of the date of the will there were 255 employees. At that time, 20 had 25 years of service, of whom only two were over 65 years of age. At the conclusion of 25 years of service, 75 would be under 50 years of age; 45 would be between ages 50 and 54; 34 would be between ages 55 and 59; 27 would be between ages 60 and 64; and 74 would be at age 65 or over.

As of the date of testator's death, there were 219 employees. Thirty-five had completed 25 years of service, of whom 15 were over 65 years of age. At the end of 25 years of service, 53 would be under age 50; 37 would be between ages 50 and 54; 39 would be between ages 55 and 59; 22 would be between ages 60 and 64; and 68 would be at age 65 or over.

The question which suggests itself is, what would be the fate of the pension plan if all who served 25 years chose to quit to obtain $1,500 per year? On the date of the will, as of which time the testator's intention must be gleaned, *In re Armour's Estate, supra* (11 *N. J.*, at *page* 270), 211 of the total work force of 255 earned under $4,000 per year. Of these, 53 earned $2,500 or less; 69 earned between $2,501 and $3,000; 60 earned between $3,001 and $3,500; and 29 earned between $3,501 and $4,000. We may assume that the pay brackets would be generally higher after 25 years of service; nonetheless, the inducement to quit and supplement earnings elsewhere by an annual pension of $1,500 would be apparent.

Actuarial testimony shows that if all employees elected to quit after 25 years of service and received the monthly pension of $125, the fund would be exhausted by 1961. If this is what the testator contemplated when he drew his will, he would have needed a principal fund of $2,473,000 to fulfill his desire to provide for all of the employees. Actually, as of 1946 the fund would have been inadequate on the basis of retirement at age 65, since $840,000 would then have been required. As of the date of death, because of the increase in social security benefits, the fund was sufficient to cover all pensions beyond the year 1993 if retirements occur at age 65.

The foregoing figures persuasively negate a purpose to benefit those who choose to quit after 25 years of service. Mr. Wolf could hardly have intended to benefit those who so elected to the exclusion of the employees who remained with his company. He could hardly have intended a construction which would thus defeat the plan. Nor could he have intended to riddle the work force of his company by offering an inducement to quit and work elsewhere. The company is engaged in the chemical field. The experience and know-how of the employees is an invaluable intangible asset. The success of the company was affirmatively necessary for the success of the pension plan because the *corpus* of the trust consisted of shares in that company. And the

testator's concern with the welfare of the company is equally
evident even if the options should be exercised, for he ex-
pressed his desire to benefit the optionees and hence could
not have intended to jeopardize their investment. And of
course, in terms of the welfare of the employees themselves,
he wanted a company which could continue to offer gainful
employment.

A will should be so construed as to accomplish the
purpose of the testator; an interpretation which would
defeat it must be rejected. *Ferguson v. Rippel*, 23 *N. J.
Super.* 132 (*App. Div.* 1952). Hence we agree with the
trial court that Mr. Wolf did not intend to benefit employees
who voluntarily left their jobs.

The judgment provides that "the only employees en-
titled to a pension are those mentioned in the will who
serve or have served the company for at least twenty-five
years and terminate their employment after having reached
the age of sixty-five, such termination to be voluntary or
involuntary." The trial court thus found that Mr. Wolf
intended integration with the social security program for
the purpose of establishing entitlement to a pension under
his will, and indeed on the basis of the federal statute as
it read when the will was executed, thus excluding changes
thereafter, as for example the reduction of the retirement
age for women to age 62. 42 *U. S. C. A.* § 416(*a*), as
amended. With this interpretation, we disagree.

The will nowhere conditions the pension upon entitlement
to benefits under the social security law. The sole basis for
the view that the social security act should control is the
provision that the pension shall be reduced by social security
payments. But the will also provides for like reduction by
reason of payments under a company plan. None as yet
exists, but if the company should adopt a plan varying from
the social security program as to the basis for entitlement,
which would control? Nothing in the will intimates that
the reference to the company plan and to social security
was made for any purpose beyond the stated one, to wit,
to reduce the sums payable under the will. It may be

noted that the will departs from the social security act in several respects. It provides for a widow of an employee only if she married him at least 20 years prior to the testator's death. It broadly provides that "any retired employee may freely accept other employment or engage in other remunerative activities without suffering loss, or diminution in the amount of his or her pension," thus ignoring the monetary limitations prescribed in the social security program.

Rather, it seems to us, the testator left the matter of retirement to the company itself, whether or not the company should adopt a further plan of its own. This conclusion follows from several considerations. It inheres in the very concept of retirement for pension purposes, *i. e.*, the concurrent action of the employer. It is more likely that the testator reposed his confidence in the management he knew, and desired management's determination of retirement on the basis of the mutual interests of the employer and employee in the light of the characteristics of the particular industrial activity in which they are engaged, rather than to have retirement determined by the will of another, namely, the Congress, which legislates for a broad scene, without, of course, giving special consideration to the circumstances of this company and its employees. In the last analysis, the pension plan the testator created was intended to be a company plan which the company might later supplement with a plan of its own. We say this because, although the employees are the immediate beneficiaries, yet there is a concurring purpose to benefit the company, for the plan ultimately is designed to encourage and reward future service with the company, no different in this aspect from a plan financed by the company itself.

We read the final paragraph quoted from the will hereinabove, wherein the testator authorized the trustees to obtain the necessary information from management for the purpose of determining "when a pension is payable to any employee or retired employee," to reflect his thought that the retirement determination by the company shall control. It may

be noted that in the indenture of 1923 creating the *inter vivos* trust and in the 1946 revision thereof, executed some three weeks after the will, Mr. Wolf provided that the board of directors of the company shall direct which employees shall benefit thereunder without any restriction as to age. It is to this trust that the excess annual income of testamentary trust and the balance of the trust (after gifts to three hospitals) are payable. We are satisfied that the testator intended to continue the same policy which characterized his generous distributions since 1923, to wit, that "retirement" shall occur when the company shall so determine upon the basis it shall fix, provided only that so far as benefits under the will are concerned the employee shall have served for 25 years.

Following the trial court's decision, the trustees informally raised the question whether they may be surcharged with respect to payments made to employees who had quit. The judgment as entered provides that the court's construction shall be effective as of the date of the judgment. By cross-appeal the trustee under the *inter vivos* trust questions the exoneration of plaintiffs if such should be the import of the judgment. The issue was not raised in the complaint or any answering pleading or the pretrial order; nor was it tried. Plaintiffs say there is factual proof they would offer if liability were asserted. Under the circumstances, we should not consider the question and hence neither the judgment below nor our action shall be deemed to constitute a determination of it.

The judgment is modified in the respects set forth above and as so modified it is affirmed.

HEHER, J. (for modification). I concur in Judge Sullivan's construction of the deceased's will as stated in his conclusions and embodied in the judgment of the Chancery Division of the Superior Court; but I join in the modification of the judgment in respect of the provision rendering the construction given the will effective as of the date of the entry of the judgment, according to the view

in this regard expressed by Mr. Justice WEINTRAUB for this court.

JACOBS, J., joins in this modification.

*For modification*—Chief Justice VANDERBILT and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and WEINTRAUB—7.

*Opposed*—None.