355 F.2d 269
 66-1 USTC P 12,366
 W. W. WATSON, Schuyler E. Tylee and United States Trust
Company of New York, as Executors of the Last Will
and Testament of Jacques Wolf, Deceased,
v.
UNITED STATES of America, Appellant.
 No. 14717.
 United States Court of Appeals Third Circuit.
 Argued Oct. 8, 1964, Reargued May 25, 1965.
Decided Dec. 22, 1965.
 
 Norman H. Wolfe, Dept. of Justice, Tax Division, Washington, D.C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attys., Dept. of Justice, Washington, D.C., David M. Satz, Jr., U.S. Atty., Vincent J. Commisa, Asst. U.S. Atty., on the brief), for appellant.
 Bernard Cedarbaum, New York City (Charles B. Alling, Montclair, N.J., on the brief), for appellees.
 Before BIGGS, Chief Judge, McLAUGHLIN, KALODNER, STALEY, HASTIE, GANEY, SMITH and FREEDMAN, Circuit Judges.
 McLAUGHLIN, Circuit Judge.
 
 
 1
 The issue before us arises out of a testamentary trust in the will of Jacques Wolf who died on January 26, 1954, a resident of the State of New Jersey. The Commissioner refused to allow a deduction under Section 812(d) of the 1939 Code, 26 U.S.C. 1952 ed. 812(d) of the amount of the bequest made by Clause (5) Art. 7 of the will as a bequest to trustees exclusively for charitable purposes. The tax was paid and thereafter the executors brought this suit for refund. The district court upheld their contention and the Government appeals. There is no dispute regarding the facts which have been stipulated.
 
 
 2
 Clause (5) of Article 7 in pertinent part reads:
 
 
 3
 'Clause (5) Forty per cent (40%) thereof to my Trustees hereinafter named, in trust, however, for the following purposes: To hold the same until the death of the last survivor of the following described persons, namely, my chauffeur, Fred Brower, my friend Jerome Payet, all persons who at the time of my death are employees of Jacques Wolf & Co., all former employees of Jacques Wolf & Co. who retired prior to my death after having served for twenty-five (25) or more years with Jacques Wolf & Co., and the wives of all such employees and retired employees who had been married to them for at least twenty (20) years at the time of my death; to invest and keep the same invested and to make the following payments therefrom: * * *'.
 
 
 4
 There were certain other detailed instructions regarding specific pension payments, pension reductions by Social Security benefits, etc. If a yearly income from the trust corpus exceeded pensions to be paid that year, the balance was to go to the trustee of the Jacques Wolf & Co. Employees' Trust Fund which had been created in 1946. That trust instrument provided that the trustee should pay the income from the trust to such employees of the company and such personal employees of Jacques Wolf as the board of directors of the company might from time to time designate. After the death of Mr. Wolf, the trustee of the Employees' Trust Fund was directed to disburse the principal and income 'in such manner and to such persons and/or corporations as the Board of Directors of Jacques Wolf & Co. may from time to time direct.' When the Testamentary Trust was terminated, which event would occur on the death of the last survivor of the beneficiaries named in it, the principal and income then existing of that trust was to be distributed by giving $2,000. to each of the hospitals named in it and the balance to the trust of the Jacques Wolf & Co. Employees' Trust Fund. In 1956, the company and the United Mine Workers Union established a pension plan for certain qualified employees. As a result of this all of the Testamentary Employees' Trust Fund income is now required to be paid into the Employees' Trust Fund except those sums payable to employees who had retired prior to the adoption of the plan, or to their widows or to employees not covered by the union agreement. Between June 1, 1956 and April 29, 1959, the company directors under the Employees' Trust Fund instrument authorized certain payments to various employees in appreciation of their service, the payments being made in both lump sum and pension type disbursements.
 
 
 5
 On April 29, 1959 in anticipation of the sale of the company and the retirement of its then board of directors, the latter irrevocably directed the trustee of the Employees' Trust Fund to disburse in monthly payments 'all of the principal and income constituting said fund at present and any and all amounts which the trustee receives hereafter to the employees or former employees of Jacques Wolf & Co. as listed on schedules designated as A and B and made a part hereof.' At the death of the last survivor of the beneficiaries the balance was to be divided among the three hospitals mentioned in the Testamentary Employees' Trust. Aside from the Wolf chauffeur, everyone receiving payments from the Testamentary Employees' Trust was a company employee of twenty-five years or more service. Everyone who has or will receive payments from the Employees' Trust Fund was a company employee. All employees who have so qualified have received payments under the mentioned instruments.
 
 
 6
 From the above stipulated facts it would seem that the Testamentary Trust involved was manifestly not a charitable bequest within the definition of Section 812(d). We are not here dealing with an impoverished class. In thought and execution this was an ordinary pension trust, explicitly for the benefit of both employee and employer. It was a real part of the compensation to the employee; a logical, legitimate and impelling incentive to a person both in seeking employment with the company and after being hired. The quid pro quo to the company was at least as important, in helping to attract desirable personnel and obtaining satisfactory results from them. See Duffy v. Birmingham, 190 F.2d 738 (8 Cir. 1951); Harvey v. Campbell, 107 F.Supp. 757 (N.D.Tex.1952). Both the 1939 Code (Section 165(a); Section 101(6) and the 1954 Code (Sections 401(a) and 501(a)); Section 501(c)(3) sharply distinguish between employees' trusts and charitable organizations. The Commissioner of Internal Revenue in 1956, under facts almost identical with those at bar, soundly ruled that such employees' pension trusts are not charitable organizations within the meaning of the Code. He held (Rev.Rul. 56-138, 1956-1 Cum.Bull. 202):
 
 
 7
 'A trust is organized and operated by an employer for the primary purpose of paying pensions to its retired employees. In addition, the trust also provides certain other benefits to selected employees or their beneficiaries, the selection of the recipients and the amounts paid being based on need and being solely within the discretion of an executive committee. Held, a trust organized and operated for the primary purpose of paying pensions to retired employees is not organized exclusively for charitable purposes within the intendment of section 501(c)(3) of the Internal Revenue Code of 1954 and, therefore, is not entitled to exemption from Federal income tax under section 501(a) of the Code. Contributions to such a trust are not considered to be charitable contributions and therefore, are not deductible by the donors as charitable contributions under section 170 of the Code.'
 
 
 8
 The source of the misconception regarding the nature of the trust at bar was the old decision of this court in Gimbel v. Commissioner, 3 Cir., 54 F.2d 780 (1931). It was there held that the employer employee fund involved qualified as having been '* * * organized and operated exclusively for charitable and educational purposes within the Revenue Act of 1924 (section 231 (26 U.S.C.A. 982 and note)).' This in the face of the specific ruling in that opinion that 'In its practical working, the main or dominant purpose of the foundation is the grant of pensions, * * *.' In reaching the above conclusion that the Gimbel fund was within the Act the court cited Bok v. McCaughn, 42 F.2d 616 (3 Cir. 1930) and Mutual Aid, etc., Ass'n. v. Commissioner, 42 F.2d 619 (3 Cir. 1930), as having discussed the general subject, particularly stressing a quotation in Bok from a statement of an attorney defining charitable trust in another appeal, Vidal v. Girard's Exs. 2 How. 128, 11 L.Ed. 205 (1844). The quotation reads 'Whatever is given for the love of God, or the love of your neighbor, in the catholic and universal sense, given from these motives and to these ends, free from the stain or taint of every consideration that is personal, private, or selfish.' The Girard will case had nothing to do with pension trusts. It concerned the establishment of a college for the poor. In any event, whatever might be said as to the rightness of said definition, it could not be correctly applied to the trust at bar which contains entirely proper personal, private and legitimately selfish elements. And certainly, as of this day and age, that definition cannot be said to accurately describe the Gimbel employees' foundation. We strongly disagree with the suggestion that the conclusion that the Testamentary Trust was made for exclusively charitable purpose in accordance with 812(d) was a permissible one under C.I.R. v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). That conclusion was founded on a similar one in Gimbel which had been made by the appellate court in reversing the lawfully designated fact finder, the Board of Tax Appeals. With the lapse of time and changed economic conditions the district court's holding in this appeal is even more clearly wrong than the appellate conclusion in Gimbel upon which it relies. In fairness, we note and emphasize that the district judge had no recourse but to follow the then undisturbed Gimbel opinion. It should be noted also that the other decisions named in support of Gimbel, to the extent that they do, are, to say the least, as outmoded as is Gimbel.
 
 
 9
 One other fact affecting the instant appeal needs comment. The Wolf will was before the New Jersey state courts on two occasions. In the first, there was an oral opinion by a judge of the Superior Court in Passaic-Clifton National Bank and Trust Co. (Super.Ct.N.J.Chan.Div.Essex Co. C458-55 decided April 22, 1957). There the judge said that the Wolf Employees' Trust Fund was not affected by the New Jersey rule against perpetuities, on the ground that it was a valid trust for the employees of the company and a charitable trust. In that opinion and the formal judgment later entered thereon the court categorically upheld the entire pension plan of the Wolf Testamentary Trust. On May 6, 1957 the New Jersey Supreme Court in modifying another decision of the Superior Court construing a phase of the testamentary pension provisions of the same Wolf will, held regarding that trust, Watson v. Brower, 24 N.J. 210, 219, 131 A.2d 512, 517:
 
 
 10
 'In the last analysis, the pension plan the testator created was intended to be a company plan which the company might later supplement with a plan of its own. We say this because, although the employees are the immediate beneficiaries, yet there is a concurring purpose to benefit the company, for the plan ultimately is designed to encourage and reward future service with the company, no different in this aspect from a plan financed by the company itself.'
 
 
 11
 The dissents miss the significance of the findings of the New Jersey courts. We do not contend that the so called 'dicta' of the New Jersey Supreme Court in Watson v. Bower, supra, necessarily vitiates the finding of the New Jersey Superior Court that the Testamentary Trust is a charitable trust under New Jersey law for the purpose of eliminating any effect on it of the New Jersey rule against perpetuities. And we are satisfied that the upholding by the New Jersey courts of the pension provisions of the trust simply adds further substantial weight to the fact that the trust by its very nature cannot qualify under the governing federal law for a deduction under Section 812(d) of the 1939 Internal Revenue Code, 26 U.S.C. 1952 ed. 812(d). As the United States Supreme Court said in United States v. Pelzer, 312 U.S. 399, 402-403, 61 S.Ct. 659, 661, 85 L.Ed. 913 (1941):
 
 
 12
 'But as we have often had occasion to point out, the revenue laws are to be construed in the light of their general purpose to establish a nationwide scheme of taxation uniform in its application. Hence their provisions are not to be taken as subject to state control or limitation unless the language or necessary implication of the section involved makes its application dependent on state law. Burnet v. Harmel, 287 U.S. 103, 110 (53 S.Ct. 74, 77 L.Ed. 199); Morgan v. Commissioner, 309 U.S. 78, 81 (60 S.Ct. 424, 84 L.Ed. 585).'
 
 
 13
 To the same effect Pearlman v. Commissioner of Internal Revenue, 153 F.2d 560, 562 (3 Cir. 1945).
 
 
 14
 New Jersey at most merely construed the trust as a charitable trust for the purpose of putting it beyond the reach of the state perpetuity law. New Jersey rightly did not pretend to concern itself whatsoever with the purely federal question of whether the Wolf bequest was to be used by the trustee '* * * exclusively for * * * charitable * * * purposes' and thus become deductible under Section 812(d) of the Internal Revenue Code of 1939, the admittedly applicable federal income tax law. We therefore hold that there is no conflict whatsoever between our position in this appeal and our decision in Gallagher v. Smith, 3 Cir., 223 F.2d 218 (1955).
 
 
 15
 The judgment of the district court will be reversed and the cause remanded for entry of judgment in favor of the defendant-appellant and against the plaintiffs-appellees.
 
 
 16
 WILLIAM F. SMITH, Circuit Judge (concurring).
 
 
 17
 I am in full agreement with the majority opinion. However, I am prompted to express my personal views as to the inapplicability of the state court decision in the present controversy.
 
 
 18
 The testamentary trust here in question was excludable from the gross estate of the testator only if it met the requirements of 812(d) of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. 812(d) 1939, which provides in pertinent part as follows:
 
 
 19
 'For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate--
 
 
 20
 ' * * * *urp
 
 
 21
 '(d) * * * The amount of all bequests, legacies, devises, or transfers * * * to a trustee or trustees, * * *, but only if such contributions or gifts are be used by such trustee or trustees, * * *, exclusively for religious, charitable, scientific, literary, or educational purposes. * * *.'
 
 
 22
 What constitutes a trust 'exclusively for charitable purposes,' within the meaning of the statute, is a question of federal law which should be determined without reference to the local decision.
 
 
 23
 The will of Jacques Wolf was before the Superior Court of New Jersey, Chancery Division, in an action for construction brought by the executors, the appellants. Therein the court held that under State law the testamentary trust was 'charitable' and not subject to the rule against perpetuities. But see Leeds v. Harrison, 9 N.J. 202, 87 A.2d 713, 720 (Sup.Ct.1952); Wilber v. Owens, 2 N.J. 167, 65 A.2d 843, 846 (Sup.Ct.1949). The decision of the Superior Court may not be regarded as conclusive as to the deductibility of the testamentary trust from the gross estate of the testator.
 
 
 24
 It is now firmly established that in matters of federal taxation, state law may control only when the federal revenue act, 'by express language or necessary implication makes its operation dependent upon state law.' Lyeth v. Hoey, 305 U.S. 188, 194, 59 S.Ct. 155, 158, 83 L.Ed. 119 (1938). Accord, Estate of Putnam v. Comm'r., 324 U.S. 393, 65 S.Ct. 811, 89 L.Ed. 1023 (1945); United States v. Pelzer, 312 U.S. 399, 402, 403, 61 S.Ct. 659, 85 L.Ed. 913 (1941) and cases hereinafter cited. Where property rights and legal interests therein are governed by and adjudicated under state law, the adjudication is conclusive as to the nature and extent of those rights and interests; the tax liability to which those rights and interests may be subject is then governed by federal law. Helvering v. Stuart, 317 U.S. 154, 161, 162, 63 S.Ct. 140, 87 L.Ed. 154 (1942); Morgan v. Commissioner, 309 U.S. 78, 80, 81, 60 S.Ct. 424, 84 L.Ed. 585 (1940); Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (1937). This rule has been followed in several cases decided by this Court, Darlington's Estate v. C.I.R., 302 F.2d 639 (1962); Beecher v. United States, 280 F.2d 202 (1960); Babcock's Estate v. Commissioner of Internal Rev., 234 F.2d 837, 841 (1956); Gallagher v. Smith, 223 F.2d 218, 222, 223 (1955), but the case now before us and the cited cases have nothing in common either in law or in fact.
 
 
 25
 We are here concerned with a revenue provision nationwide in its application. Thereunder a testamentary trust is deductible from the testator's estate for tax purposes if it is 'exclusively for charitable purposes.' There is nothing in the statute to indicate that it was the Congressional intent to make deductibility dependent on local definitions, which vary widely from state to state. It is my opinion that the revenue provision contains its own criterion which must be given a uniform construction if the estate tax laws are to be fairly and equitably applied. See United States v. Pelzer; Lyeth v. Hoey, supra; Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199 (1932). Anything but a uniform construction would disrupt the national scheme of taxation.
 
 
 26
 It seems unnecessary to recite the terms of the trust except to note that its primary purpose was to provide monthly pensions to employees and former employees of Jacques Wolf & Co., in which the testator was the principal stockholder. The pensions were payable to those who qualified on the basis of age, years of service, etc., and regardless of need. Although an employees' pension plan may be incidentally and remotely beneficial to the community, it may not be regarded as 'exclusively for charitable purposes,' the statutory criterion of deductibility. See Restatement of the Law, Trusts 2d, 375, Comment g; Duffy v. Birmingham, 190 F.2d 738, 740 (8th Cir. 1951); Underwriters Laboratories v. Com'r. of Int.Rev., 135 F.2d 371, 373 (7th Cir. 1943), cert. den. 320 U.S. 756, 64 S.Ct. 63, 88 L.Ed. 450. An employees' pension plan is of direct economic benefit only to those who qualify under its terms.
 
 
 27
 The dissenting opinion of Chief Judge Kalodner rests solely on Gallagher v. Smith, supra. This case is distinguishable on its facts from the one now before us and the rule therein announced has no application here. In that case the question involved the taxability of a legal interest governed by the adjudicated under local law. Paragraph 4, supra.
 
 
 28
 Chief Judge BIGGS and Circuit Judges HASTIE and FREEDMAN, who concur in the majority opinion, also concur in this opinion.
 
 
 29
 KALODNER, Chief Judge (dissenting).
 
 
 30
 In the instant case, the Superior Court of New Jersey, in Passaic-Clifton National Bank and Trust Company (Super.Ct.N.J.Chan.Div.Essex Co. C-458-55), in an opinion adjudicating the specific issue as to whether the trust here involved was or was not a charitable trust, held:
 
 
 31
 'The trust created by the aforesaid instrument is charitable'.
 
 
 32
 That adjudication, under our holding in Gallagher v. Smith, 223 F.2d 218 (1955), is conclusive and dispositive of the question here presented as to whether or not the mooted trust is or is not a charitable trust.
 
 In Gallagher, we said at page 223:
 
 33
 'Since the decedent was domiciled in Pennsylvania, all the interested parties reside there and the property of the decedent's estate * * * is located there, the effect of the will and the interest which the plaintiff received under it are to be determined by the law of that state.'
 
 And at pages 226-227 we said:
 
 34
 '* * * the adjudication by the Order of the Orphans' Court of the plaintiff's interest in the trust should have been given conclusive effect in the present case and the district court should not have given independent consideration to that question.'
 
 
 35
 Accordingly, I am of the opinion that Gallagher precluded the district court from giving 'independent consideration' to the issue as to whether the mooted trust is 'charitable', in view of the adjudication by the New Jersey Superior Court that it is a 'charitable trust', and that this Court is similarly precluded.
 
 
 36
 For the reasons stated I would affirm the judgment of the District Court albeit it was premised on other grounds.
 
 
 37
 STALEY, Circuit Judge (dissenting).
 
 
 38
 I respectfully dissent from the opinion and decision of the majority. I would affirm upon the thorough and well reasoned opinion of the district court,[1] which contains both findings of fact and conclusions of law.
 
 
 39
 At the outset, it should be pointed out that the primary basis for the divergence of opinion in this case lies in the majority statement that 'we are not here dealing with an impoverished class.' I do not believe that the law, as it existed prior to the instant case, required absolute poverty by the class to be benefited in order to qualify as a charitable purpose. In overruling Gimbel v. CIR, 54 F.2d 780 (C.A.3, 1931), and reversing the instant case, the majority fails to examine the social and economic factors which underlie that decision. No FBI investigation is necessary to disclose that, at the time of Gimbel, average employees had no adequate means of accumulating sufficient funds to maintain themselves in their old age. If any authoritative evidence is required to substantiate this, we need only look to the legislative history and stated purpose of the first Social Security Act, 49 Stat. 620 (1935). Nevertheless, the majority opinion, in overruling Gimbel, holds that distributions to a class of retired employees, who may be presumed to be unable to support themselves, are not charitable.
 
 
 40
 Not content with stating that Gimbel was wrongly decided, the majority seizes upon 'the lapse of time and changed economic conditions (since Gimbel)' to condemn the district court's reliance upon it. The import of the majority's language is that company pension plans and social security benefits have displaced the need for assistance in this area. Although this may be true to a limited extent, the majority has neglected to discuss that portion of the trust agreement which negates the impact of any such changes. Subdivision (c) of Article Seven of the Will provides that no beneficiary of the trust shall receive in excess of $125.00 per month, and that that amount shall be reduced by any social security and Jacques Wolf & Company retirement benefits for which the beneficiary is eligible. Thus, the settlor's intent is clearly ascertainable: he sought to supply income to those who did not qualify for either social security or retirement benefits or to supplement the income of those who could not maintain themselves on the benefits received from social security or retirement funds.
 
 
 41
 It would appear that the majority's criteria is misplaced. Had it examined Gimbel in the light of the time it was decided and the then prevailing economic conditions, it would have concluded that not only was its decision correct, but also that the instant case is controlled by it, regardless of the intervening social and economic changes. However, it should be pointed out that I do not read Gimbel as holding that any contribution, regardless of the circumstances, is charitable, merely because it is to a pension fund.
 
 
 42
 Within the limitations imposed by Gallagher v. Smith, 223 F.2d 218 (C.A.3, 1955), the majority attempts to bolster its position that the trust is non-charitable by pointing to an observation made by the New Jersey Supreme Court when this same trust agreement was before it. By quoting the dictum from Watson v. Brower, 24 N.J. 210, 219, 131 A.2d 512, 517 (1957), that 'there is a concurring purpose to benefit the company,' the majority appears to adopt the altruistic meaning of 'charity' to support its conclusion. While true charity is always impelled by a sense of moral responsibility to aid the less fortunate, this, of course, cannot be the test under the Internal Revenue Code. Otherwise, no deduction would ever be allowed for corporate gifts to community funds, the Red Cross, or other such organizations since such gifts are largely motivated by tax savings, the building of good will in the community and the marketing area, or for reasons other than a sense of moral responsibility. Nonetheless, no one would question the 'charitableness' of such donations for tax deduction purposes. Here, true enough, there may have enured to the company certain incidental benefits. However, that should not be dispositive. What is important is that, here, the beneficiaries comprised a class that assuredly needed old age assistance.
 
 
 43
 One further matter remains. Under the guise of deciding a question of law, the majority has decided a mixed question of law and fact, which the Supreme Court has said remains almost exclusively in the province of the fact-finder. In CIR v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960) (a case involving the interpretation of the word 'gift'), the Court, in an analogous situation, said:
 
 
 44
 'Third. Decision of the issue presented in these cases must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case. The nontechnical nature of the statutory standard, the close relationship of it to the data of practical human experience, and the multiplicity of relevant factual elements, with their various combinations, creating the necessity of ascribing the proper force to each, confirm us in our conclusion that primary weight in this area must be given to the conclusions of the trier of fact. Baker v. Texas & Pacific R. Co., 359 U.S. 227 (79 S.Ct. 664, 3 L.Ed.2d 756); Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 475 (64 S.Ct. 249, 88 L.Ed. 171); United States v. Yellow Cab Co., 338 U.S. 338, 341 (70 S.Ct. 177, 94 L.Ed. 150); Bogardus v. Commissioner, supra, 302 U.S. (34) at page 45 (58 S.Ct. 61, 82 L.Ed. 32) (dissenting opinion).' 363 U.S. at 289, 80 S.Ct. at 1199.
 
 
 45
 It went on to say that in this type of case
 
 
 46
 'One consequence of this is that appellate review of determinations in this field must be quite restricted. Where a jury has tried the matter upon correct instructions, the only inquiry is whether it cannot be said that reasonable men could reach differing conclusions on the issue. Baker v. Texas & Pacific R. Co., supra, 359 U.S. at page 228 (79 S.Ct. 664). Where the trial has been by a judge without a jury, the judge's findings must stand unless 'clearly erroneous.' Fed.Rules Civ.Proc. 52(a), 28 U.S.C.A. 'A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' United States v. United States Gypsum Co., 333 U.S. 364, 395 (68 S.Ct. 525, 92 L.Ed. 746). The rule itself applies also to factual inferences from undisputed basic facts, id. 333 U.S. at page 394 (68 S.Ct. 525), as will on many occasions be presented in this area. Cf. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 609-610 (70 S.Ct. 854, 94 L.Ed. 1097).' 363 U.S. at 290-291, 80 S.Ct. at 1199-1200.
 
 
 47
 For all these reasons, I would affirm the decision of the district court.
 
 
 
 [1]
 The full text of the district court's opinion may be found in 63-2 U.S.Tax Cas. 90,379 (D.N.J., 1963)