ESTATE OF RUDOLPH G. LEEDS, THE SECOND NATIONAL BANK OF RICHMOND, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 396–69, 397–69. Filed April 16, 1970.

*Lester M. Ponder, Anton Dimitroff*, and *Edward W. Harris III*, for the petitioners.

*Bernard J. Boyle* and *Wayne I. Chertow*, for the respondent.

OPINION

## Issue 1.  The Marital Deduction

Section 2056 provides generally that, for purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes from the decedent to the decedent's surviving spouse. Section 2056(c)(1) limits the deduction to an amount not exceeding 50 percent of the value of the "adjusted gross estate."

We must decide whether 50 percent of the value of Rudolph's "adjusted gross estate" passes to Florence, his surviving wife, as provided by Item IV of his will.

Rudolph directed his executor to pay all estate taxes from his estate, i.e., out of the property passing under his will. Because that property is not sufficient to pay all Federal estate taxes and also to distribute the bequests provided under Items II, III, IV, V, and VI, some portion of the Federal estate taxes must be paid out of one or more of those bequests. If any amount must be paid out of the bequest under Item IV, then the amount of property passing to Florence—and the allowable marital deduction—will be reduced by such amount.

Our question, then, is simply, what bequests are to be invaded first for the payment of the Federal estate tax. The answer is found, in this case, in the law of Indiana. *Riggs* v. *Del Drago*, 317 U.S. 95 (1942).

The applicable statutory provision, sec. 7–1103, Ind. Ann. Stat. (1953), provides:

7–1103. Order in which assets appropriated—Abatement—General rules— Contrary provisions, plan or purpose.— (a) Except as provided in subsection (b) hereof, shares of the distributees shall abate, for the payment of claims, legacies, the widow's or family allowance, the shares of pretermitted heirs or the share of the surviving spouse who elects to take against the will, without any preference or priority as between real and personal property, in the following order:

(1) Property not disposed of by the will;

(2) Property devised to the residuary devisee;

(3) Property disposed of by the will but not specifically devised and not devised to the residuary devisee;

(4) Property specifically devised.

A general devise charged on any specific property or fund shall, for purposes of abatement be deemed property specifically devised to the extent of the value of the thing on which it is charged. Upon the failure or insufficiency of the thing on which it is charged, it shall be deemed property not specifically devised to the extent of such failure or insufficiency.

(b) If the provisions of the will or the testamentary plan or the express or implied purpose of the devise would be defeated by the order of abatement stated in subsection (a) hereof, the shares of distributees shall abate in such other manner as may be found necessary to give effect to the intention of the testator.

A careful reading of the entire will of Rudolph G. Leeds persuades us that in order to give effect to the intention of the testator, the marital share must abate last. By Item I the decedent directed that his estate taxes be paid from other property than that given and devised to his wife or from life insurance received by her so that any property received by her would not be reduced by the payment of such taxes, and for the further reason that his estate might get the full benefit of the marital deduction. By Item IV the decedent gave and devised to his wife such an amount of his property, real or personal, which when added to his life insurance paid to his wife and the bequests made to her in Item II above, shall total an amount in equal value to 50 percent of his adjusted gross estate, as such term is used in the Federal Tax Reduction Act of 1948.

We think the decedent's intention to give 50 percent of his adjusted gross estate to his wife was predominant over his intention to make the bequests under Items V and VI. Accordingly, we hold the bequests under Items V and VI abate first for the payment of Federal estate taxes and the amounts given to his wife, last.

## Issue 2. The Charitable Deduction

Section 2055 provides that for the purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests to trustees, but only if such contributions *are to be used by such trustees exclusively for charitable* (among other) *purposes.* The determination, for what purposes are the bequests to be used, is to be made from an examination of the terms of the bequests as properly construed under the applicable State law, in this case, the law of Indiana. Whether those purposes, so determined, are exclusively "charitable" within the meaning of section 2055 is a question of Federal law. *Watson* v. *United States,* 355 F. 2d 269 (C.A. 3, 1965.)

The bequests are to be used by the trustees of the Palladium Fund "primarily as a pension, unemployment, and insurance fund for the employees of the * * * Palladium-Item, and the wives and minor children of said employees." Item VII, clause 2(a), of the will of Rudolph G. Leeds. The purpose of the Palladium Fund is "to secure regular employees of the Palladium-Item and their dependents against the hazards of unemployment, over which they have no control, due principally to sickness, accident, disability, death and old

age." Item VII, clause 2(c). In our view the purpose in other words, is an *insurance purpose*, to benefit all regular employees by securing them against the enumerated hazards. This purpose is to be effectuated in either of two ways: (1) The use of income "for the purchase of life insurance for said employees, individually or as a group, or for such other insurance or annuities as * * * [the trustees] deem proper for the carrying out of the purposes of said trust, or for making contributions to such purchases" (Item VII, clause 2(d)(8)); (2) the payment of benefits to employees "when unemployment is due to sickness, accident, disability, or any other good cause, including lack of work which the employee is capable of performing" (Item VII, clause 2(d)(4)). In purpose and in effect, the decedents' bequests will operate to relieve qualifying employees of the Palladium-Item of the expense of securing themselves, by savings, insurance, health plan contributions or otherwise, against these same hazards. To us this clearly is *not exclusively* a "charitable" use of the bequests.

A second use of decedents' bequests is the payment of retirement pensions. "Employees, sixty years of age, who have been regularly employed by * * * [the Palladium-Item] for at least twenty years, shall be eligible to retirement pensions" (Item VII, clause 2(d)(5)). All such employees qualify for retirement pensions without qualification. We do not think this constitutes a use of decedents' bequests for charitable purposes.

As we see it, decedents' bequests are to be used by the trustees merely as an additional form of compensation to the employees of the Palladium-Item; "a logical, legitimate and impelling incentive to a person both in seeking employment with the company and after being hired. The quid pro quo to the company was at least as important, in helping to attract desirable personnel and obtaining satisfactory results from them." *Watson* v. *United States, supra* at 271. In these circumstances, we cannot allow the deduction.

Petitioner relies upon *Estate of Leonard O. Carlson*, 21 T.C. 291 (1953), and the cases cited therein, as establishing that the purposes of a welfare or retirement fund for the benefit of employees of a corporation are charitable. Upon reconsideration of *Carlson*, in the light of *Watson* v. *United States, supra*, we conclude that the position we took in *Carlson* is no longer tenable. We note that *Carlson* relied on *Gimbel* v. *Commissioner*, 54 F. 2d 780, which has been subsequently discredited in *Watson* by the Third Circuit Court of Appeals, the same circuit court that had decided *Gimbel* in the first instance.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*